**HEARTY et al. v. RAGUNDA et al.**

United States District Court
S. D. New York.

Sept. 29, 1953.

870

Purrington & McConnell, New York City, for libelants.

Haight, Deming, Gardner, Poor & Havens, New York City (Tallman Bissell, New York City, of counsel), for respondents.

WEINFELD, District Judge.

This is a libel in admiralty against the S. S. Ragunda in rem and against Norton, Lilly & Company in personam to recover damages in connection with the shipment of certain pears received by the vessel at Buenos Aires, Argentina, for delivery to libelants in New York.

The libel is in customary form except for Articles Sixteenth and Seventeenth, as to which respondents filed exceptions which are now before the Court for disposition.

In substance, the first fifteen articles of the libel allege that the S. S. Ragunda was owned, operated and controlled by the respondent Norton, Lilly & Company; that in April 1952, at Buenos Aires, there was delivered to the S. S. Ragunda and respondents shipments of fresh pears in good order and condition which they agreed to carry on board the vessel in refrigerated chambers equipped with quarantine facilities and to make delivery to the Port of New York in like good order and condition as and when shipped in accordance with the valid terms of bills of lading issued by respondents and said vessel; that when the respondents delivered the said pears to the Port of New York they were not in like good order and condition as when shipped, but damaged.

Articles Sixteenth and Seventeenth allege that when the pears were received by respondents at Buenos Aires they had knowledge that the laws of the United States and the regulations of the United States Department of Agriculture relating to the control of the Argentine fruit fly pest required maintenance in the refrigeration chambers of the ship of certain temperatures and that if not so maintained upon discharge at New York, the pears would be quarantined. Further, they allege that when certain of the pears were discharged at the Port of New York they were found to be in a ripening condition because high and improper temperatures had been maintained; that the pears were quarantined by the United States Department of Agriculture pursuant to its aforesaid regulations; that libelants were directed and required to store them in shore refrigeration until on or about June 3rd, 1952, at their own expense; that when eventually released to libelants they were commercially damaged and the market values were substantially lower than when the ship had discharged the pears on May 15th.

Respondents' exceptions to Articles Sixteenth and Seventeenth challenge the legal sufficiency of libelants' claim for damages resulting from the quarantine of the pears and the right to a maritime lien on the vessel for such claim. They contend that libelants "seek to hold the vessel responsible for failure to give the pears disinfestation treatment" although the bills of lading contain no such undertaking. Based upon this premise they say there is no contract to breach and hence no right to a maritime lien.

■■ It is true that the libel does not allege that the bills of lading contained an express provision requiring respondents to disinfest the fruit. However, it specifically pleads that the respondents agreed to carry the pears in "refrigerated chambers equipped with quarantine facilities." This allegation is based on the endorsement "stowed in refrigerated chambers" appearing in all the bills of lading and an additional endorsement contained in three of the bills, to wit, "vessel is equipped with quarantine facilities." The clear purport of the allegation, which undoubtedly could have been more explicitly stated, is that respondents undertook to carry the pears in such refrigerated compartments at sufficiently low temperatures to avoid quarantine. The use of the words "vessel is equipped with quarantine facilities" in three of the contracts implies maintenance of adequate tem-

peratures to protect the fruit. In any event, evidence of trade custom and usage is admissible to explain the endorsements.[1] If they impose an obligation upon respondents to maintain adequate temperatures to prevent quarantine of the pears, it is clear that libelants are asserting a breach of the maritime contract and they are entitled to a maritime lien on the vessel and a right of action to enforce the lien.[2]

Under Article Fifteenth, to which respondents take no exception, the libelants seek damages representing the difference between the market value the cargo would have had on May 15th, 1952 had it been discharged in like good order and condition as when received, and its market value in damaged condition. Under Articles Sixteenth and Seventeenth they seek special damages representing shore storage expenses and the difference in value on May 15th, 1952 and June 6th, 1952, when the cargo was released from quarantine. In effect, they seek to recover for undue delay in delivery and contend that discharge of the pears on May 15th was not delivery to libelants.[3] The claim for special damages rests upon respondents' knowledge that a breach of their obligation to maintain the required temperatures would result in the quarantine of the pears upon their discharge with consequent quarantine expenses to libelants as well as possible loss to them due to differences in market values from the date of discharge to the date of release from quarantine. In other words, liability for such damages so caused by the carrier's breach of its undertaking was within the contemplation of the parties.[4]

■ Accordingly, the allegations of Articles Sixteenth and Seventeenth, that respondents knew of the requirements of government regulations with respect to the maintenance of certain temperatures in refrigerated chambers relating to the control of the Argentine fruit fly pest, are relevant to the cause of action.

■ Under the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1304(2) (h) neither the carrier nor the ship is responsible for loss or damage arising from or resulting from "quarantine restrictions." However, this provision does not serve as exoneration where the quarantine was occasioned by, and the result of, a breach of contractual obligation.[5]

The clause relied upon by respondents to relieve them of negligence appears to be invalid under the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1303(8).

■ The exception of the respondent Norton, Lilly & Company on the ground that it was not the owner of the vessel must be overruled since the libel specifically alleges that it was such owner, and the pleading governs.

The exceptions are overruled. Settle order on notice.

---

1. The Delaware, 14 Wall. 579, 81 U.S. 579, 599, 602–603, 20 L.Ed. 779; Bache v. Silver Line, 2 Cir., 110 F.2d 60, 61–62; Ketterer v. Armour & Co., 2 Cir., 247 F. 921, 931, L.R.A.1918D, 798; Spang, Chalfant & Co. v. Dimon SS Corp., 2 Cir., 57 F.2d 965, 967; The San Guiseppe, 4 Cir., 122 F.2d 579.

2. Benedict on Admiralty, 6th Ed., Vol. 1, p. 282.

3. Tan Hi v. United States, D.C., 94 F. Supp. 432, 435; Constable v. National Steamship Co., 154 U.S. 51, 14 S.Ct. 1062, 38 L.Ed. 903; Armco International Corporation v. Rederi A/B Disa, 2 Cir., 151 F.2d 5, 8; The St. Georg, D.C., 95 F. 172, 177, 178; The Titania, 2 Cir., 131 F. 229.

4. For a statement of the damage rule see Globe Refining Co. v. Landa Cotton Oil Co., 190 U.S. 540, 543–544, 23 S.Ct. 754, 47 L.Ed. 1171; for typical application of damage theories in libel actions, see United States Shipping Board Emergency Fleet Corp. v. Florida Grain & Elevator Co., 5 Cir., 20 F.2d 583, 585; Standard Oil of California v. United States, D.C., 59 F.Supp. 100, affirmed, 9 Cir., 156 F. 2d 312; The Guanancita, D.C., 69 F. Supp. 928. See in general, 5 Williston on Contracts, p. 3805 et seq.; Carver on Carriage of Goods by Sea § 706 et seq. (8th Ed.) quoting extensively from the leading case of Hadley v. Baxendale, 9 Exch. 341.

5. Cheek-Neal Coffee Co. v. Osaka Shosen Kaisha (The Manila Maru), D.C., 36 F.2d 256, affirmed, 5 Cir., 39 F.2d 1021, upon opinion of District Court.