**REDERIAKTIERBOLAGET (Hans Von Rettig A/B and Wilh. Renson O/Y) as owner of THE motor tank vessel ARUBA, Libellants,**

v.

**COMPANIA DE NAVEGACION ANNE, S. A., Respondent.**

**Credit Hypothecaire Suisse Pour La Navigation, S. A., Intervenor,**

The Texas Co., Hanseatic Schiffsausruestung, Fricke & Lanker, Zerseen & Co., Curtis Bay Towing Company, Hazler & Co., Cavalier Marine Supply Co., Deutsche Werft A. G. and Hancock Oil Co., Intervenors.

**No. 3996.**

District Court, Canal Zone
Division Balboa.

April 27, 1955.

See also 124 F.Supp. 118.

Crowell & Rouse, by George L. Varian, New York City, and Van Siclen, Ramirez & de Castro, Ancon, Canal Zone, for libelants.

Galef & Jacobs, by Victor Jacobs, New York City, and L. S. Carrington, Ancon, Canal Zone, for respondent.

Dow & Symmers, by Daniel L. Stonebridge, New York City, and W. J. Sheridan, Jr., Ancon, Canal Zone, for intervenor, Credit Hypothecaire Suisse Pour La Navigation, S. A.

CROWE, District Judge.

On August 7, 1954, Rederiaktierbolaget (Hans Von Rettig A/B and Wilh. Renson O/Y), a corporation of the Republic of Finland, hereinafter referred to as Rebe or libellant for the sake of brevity, instituted a cause of action in admiralty against Compania de Navegacion Anne, S. A., by filing a libel in personam with clause of foreign attachment. The libel alleges that the libellant entered into a written charter party with the respondent for the motor tank vessel Aruba for a period of two years beginning on or about December 26, 1950 with hire at a rate stipulated in the charter party, a photostatic copy of which together with various addenda is attached, payable in advance in New York in accordance with the terms of the charter party and that although the expiration date of the charter was extended to July 12, 1955 and the hire was intended and agreed upon in the addenda, the charter hire has not been paid and the respondent has defaulted and is in arrears in the amount of $213,-000. The libel prays for attorneys fees and interest and an attachment against the Steam Tank Vessel Sabrina, her engines, etc.

A cost bond was executed and filed and the marshal attached the Sabrina and default was noted by order of September 3, 1954, which was vacated by consent of the libellant and the respondent was permitted to file its claim.

The libellant amended his libel and asked that the Sabrina be condemned and sold to pay libellant's damages and costs with interest and attorney fees and it also moved the court to order the Sabrina sold on the grounds that the vessel was perishable and would

deteriorate in value if held in the tropical waters during the litigation.

On September 8, 1954, Credit Hypothecaire Suisse Pour La Navigation, S. A., hereinafter called the Swiss Bank or intervenor, moved to be permitted to intervene and attached to the motion an intervening libel against the Panamanian vessel, the M/T Sabrina, her engines, etc., in a cause civil and maritime of foreclosure of a mortgage.

The intervening libel alleges that the intervening libellant or intervenor is a corporation of the Republic of Switzerland and that on November 9, 1949 the respondent, Compania de Navegacion Anne, S. A., borrowed from the intervenor 2,200,000 Swiss Francs at 4¾% interest per annum, which loan was secured by a preferred mortgage duly executed and delivered to the intervenor.

The intervening libel alleges further that on December 8, 1953, 1,320,000 Swiss Francs were paid on the original mortgage and on the same date an additional loan of 880,000 Swiss Francs, bearing the same interest rate, was made, and that by reason of a supplemental mortgage executed to further secure the obligation, the indebtedness amounts to 1,760,000 Swiss Francs plus the interest.

Copies of the original and supplement are attached to and made a part of the intervening libel and it is alleged further that the Sabrina at the time of the execution of the mortgage and supplement was and still is a duly registered motor tank vessel under the laws of Panama and that the mortgage and supplement were duly registered in Panama.

The intervening libel alleges further that under the terms of the mortgage and supplement the failure of the respondent to secure the release of the vessel within 15 days after being libelled by the original libellant herein caused the entire unpaid part of the mortgage indebtedness to be immediately due and payable.

The intervenor alleges that under the laws of the Republic of Panama a ship's mortgage duly recorded constitutes a lien on the vessel superior to the interest, lien or claim of any and all persons, firms or corporations, except such firms and corporations as may hold preferred maritime liens on the said vessel, and prays specifically that its mortgage and supplement be declared superior to the interests, liens or claims of libellant and that the ship be sold and the proceeds applied in satisfaction of its mortgage and the supplement.

Upon consent of the libellant, the intervening libel was permitted to be filed and upon the failure on the part of the respondent or the intervening libellant to oppose the motion of libellant, the ship was sold as perishable at public auction for the sum of $400,000, which sum, exclusive of certain costs of the marshal, wages to the crew and costs of repatriating certain members of the crew, is now in the registry of this court.

The libellant, Rebe, filed exceptions to the intervening libel of the Swiss Bank and without being ruled upon the Swiss Bank filed an amended intervening libel in which in addition to the allegations pleaded in the original intervening libel it avers that its mortgages are valid and subsisting preferred maritime liens against the vessel by virtue of the "Ship Mortgage Act", 46 U.S. C.A. § 921 et seq., and that the mortgage and supplement are prior and superior to the interests, liens and claims of the libellant, Rebe, and all others except those holding preferred maritime liens.

On October 20, 1955 the libellant, Rebe, filed "Objections" to the amended libel on the following grounds: (a) the libel fails to allege a cause of action, (b) the facts alleged do not constitute a cause of action in rem or in personam within the admiralty or maritime jurisdiction of the court, (c) the court is without original jurisdiction to grant the relief prayed, (d) that the subject matter of the intervening libel is nonmaritime and the claim or lien, if any, is limited to remnants and surplus after satisfaction of all maritime

liens, claims, debts and attachments and (e) that the mortgage is not a preferred mortgage within the scope of the Act of June 5, 1920, Chapter 250, Sec. 30, known as the "Ship Mortgage Act", Title 46 U.S.C.A. § 911 et seq., and the acts amendatory and supplemental to said act.

## I

■ Exceptions in admiralty are in the nature of a demurrer and address themselves to the sufficiency of the pleading and the court must for the purposes of the motion assume as true all properly pleaded material allegations of the pleading in question.

In the mind of this court all of the questions raised by the exceptions will be determined by answering two questions: (1) Is the mortgage a preferred mortgage within the scope of the Ship Mortgage Act as amended? (2) If the mortgage is a preferred mortgage, has the intervening libellant pleaded properly and set up a cause of action?

The Supreme Court of the United States in The Thomas Barlum, 293 U.S. 21, 55 S.Ct. 31, 79 L.Ed. 176, states that prior to the passage of the Act of 1920 admiralty courts had no jurisdiction over suits to foreclose mortgages on ships and that the jurisdiction of admiralty courts depends on the "Ship Mortgage Act".

Until the passage of the Act of 1920 all ship mortgages were regarded in United States Courts as non-maritime and a ship mortgagee seeking to foreclose a defaulted mortgage was relegated to the remedies available in courts of equity or common law and frequently suffered by reason of complications and "ill-suited remedies".

When the Act was adopted, there was provided a concurrent remedy to enforce the foreclosure of such "preferred mortgages" by granting exclusive original jurisdiction to United States District Courts sitting in Admiralty. 46 U.S.C.A. § 951, Subsec. K.

On several occasions the constitutional validity of the grant of jurisdiction by the Act of 1920 has been sustained. The Oconee, D.C., 280 F. 927; The Nanking, D.C., 292 F. 642; The Lincoln Land, D.C., 295 F. 358; The Thomas Barlum, supra.

The complete text of the Ship Mortgage Act, 1920 is found in 46 U.S.C.A. §§ 911 to 984 inclusive and it is a part of the Merchant Marine Act, 1920, Section 30, Chapter 250.

The intervenor, Swiss Bank, does not contend that the Ship Mortgage Act prior to the amendment of June 29, 1954 embraces its mortgage but it does contend that since the amendment, although the original mortgage was dated November 9, 1949 and the supplemental mortgage December 8, 1953, both dates antedating the amendment, the Public Law 447 which effected the amendment is remedial in character and is intended to apply to mortgages *in esse* at the time of its passage.

The intervenor also contends that the amendment broadens the scope of the act so that it is not now limited in its application to American mortgagees of foreign flag vessels nor to mortgagees complying with the conditions set forth in Subsection D of the Act but is applicable to "any mortgage" upon any documented foreign vessel provided such mortgage has been duly and validly executed in accordance with the laws of the foreign nation under the laws of which the vessel is documented and has been duly registered in accordance with such laws in the public register either at the port of the registry of the vessel or at a central office and therefore in spite of the fact that the Swiss Bank is not an American mortgagee and it has not complied with the conditions of Subsection D, it has a "preferred mortgage".

The libellant, Rebe, insists that the Act by express language is prospective in operation only and that both the original Act of 1920 and the amendment of June 29, 1954 create new rights and the amendment is not retroactive and has no application to the mortgage of the Swiss Bank.

Rebe argues that not only is the amendment prospective but it is clearly applicable only to American mortgages of foreign flag vessels and then only upon compliance with Subsection D of the Act which provides in part that the mortgage be endorsed upon the vessels' documents, a fact which is not alleged in the intervening libel.

The provisions of the Act in question are as follows: 46 U.S.C.A. § 922 in part, Subsection D.

"(a) A valid mortgage which at the time it is made, includes the whole of any vessel of the United States (other than a towboat, barge, scow, lighter, car float, canal boat, or tank vessel, of less than two hundred gross tons), shall, in addition, have, in respect of such vessel and as of the date of the compliance with all the provisions of this subdivision, the preferred status given by the provisions of section 953 of this title, if—

"(1) The mortgage is endorsed upon the vessel's documents in accordance with the provisions of this section;

"(2) The mortgage is recorded as provided in section 921 of this title, together with the time and date when the mortgage is so endorsed;

"(3) An affidavit is filed with the record of such mortgage to the effect that the mortgage is made in good faith and without any design to hinder, delay, or defraud any existing or future creditor of the mortgagor or any lienor of the mortgaged vessel;

"(4) The mortgage does not stipulate that the mortgagee waives the preferred status thereof; and

"(5) The mortgagee is a citizen of the United States and for the purposes of this section the Reconstruction Finance Corporation shall, in addition to those designated in sections 888 and 802 of this title, be deemed a citizen of the United States.

"(b) Any mortgage which complies in respect to any vessel with the conditions enumerated in this section is hereafter in this chapter called a 'preferred mortgage' as to such vessel.

"(c) There shall be indorsed upon the documents of a vessel covered by a preferred mortgage—

"(1) The names of the mortgagor and mortgagee;

"(2) The time and date the indorsement is made;

"(3) The amount and date of maturity of the mortgage; and

"(4) Any amount required to be indorsed by the provisions of subdivision (e) or (f) of this section." 46 U.S.C.A. § 951 in part:

"A preferred mortgage shall constitute a lien upon the mortgaged vessel in the amount of the outstanding mortgage indebtedness secured by such vessel. Upon the default of any term or condition of the mortgage, such lien may be enforced by the mortgagee by suit in rem in admiralty. Original jurisdiction of all such suits is granted to the district courts of the United States exclusively. * * *" 46 U.S.C.A. § 981:

"§ 981. Existing mortgages not affected

"This chapter shall not apply (1) to any existing mortgage or (2) to any mortgage hereafter placed on any vessel under an existing mortgage, on June 5, 1920, so long as such existing mortgage remains undischarged. June 5, 1920, c. 250, § 30, Subsec. U, 41 Stat. 1006."

The Amendment to subsection K, 68 Stat. 323, which amends 46 U.S.C.A. § 951:

" 'Section 30, subsection K, of the Act of June 5, 1920, as amended, known as the Ship Mortgage Act,

1920 (41 Stat. 1003), is hereby amended by adding at the end of subsection K the following provision:

"'Foreign ship mortgages: As used in subsections K, L, M, and N of this section, the term "preferred mortgage" shall include, in addition to a preferred mortgage made pursuant to the provisions of this section, any mortgage, hypothecation, or similar charge created as security upon any documented foreign vessel (other than a towboat, barge, scow, lighter, car float, canal boat, or tank vessel, of less than two hundred gross tons) if such mortgage, hypothecation, or similar charge has been duly and validly executed in accordance with the laws of the foreign nation under the laws of which the vessel is documented and has been duly registered in accordance with such laws in a public register either at the port of registry of the vessel or at a central office; and the term "preferred mortgage lien" shall also include the lien of such mortgage, hypothecation, or similar charge: Provided, however, That such "preferred mortgage lien" in the case of a foreign vessel shall also be subordinate to maritime liens for repairs, supplies, towage, use of drydock or marine railway, or other necessaries, performed or supplied in the United States.'"

## II

■ As has been frequently enunciated by the Supreme Court of the United States, and what has now become a well-settled law of the land in the interpretation of statutes, the legislative will is the controlling factor.

"The legislative intent has been designated the vital part, heart, soul and essence of the law and the guiding star in the interpretation thereof." 50 Am.Jur., 223, P. 200.

■ It is the duty of the court to apply statutes on the basis of what Congress has written.

"It is our judicial function to apply statutes on the basis of what Congress has written, not what Congress might have written." United States v. Great Northern Ry. Co., 343 U.S. 562, 72 S.Ct. 985, 993, 96 L.Ed. 1142.

■ The courts have no legislative authority and must avoid entry into the legislative field or a usurpation of legislative powers. In the construction of a statute a court must not amend, distort, remodel or give a construction which is in violation of its true meaning or repugnant to its terms.

■ As well stated in the brief of the intervenor, the Supreme Court has on innumerable occasions stated as a primary rule that statutes mean what they say and the best evidence of legislative intent is the language adopted by Congress.

## III

Whether or not the amendment of June 29, 1954 is applicable to the mortgage of the Swiss Bank which was *in esse* at the time of the passage of the amendment is determined by the intent of Congress.

▪ ■■ There is no contention on the part of the libellant, Rebe that the amendment is in violation of the Constitution and it has been held many times that the Constitution of the United States does not in its terms prohibit the enactment by Congress of retrospective laws unless they impair the obligations of contracts or partake of the character of ex post facto laws. No ex post facto law is here involved, as Art. 1, Sec. 9 of the Constitution is only applicable to criminal prosecutions. Johannessen v. United States, 225 U.S. 227, 32 S.Ct. 613, 56 L.Ed. 1066.

■ The obligations in Rebe's contract with the respondent are not impaired in any way and thus the act is not violative of the Fifth and Fourteenth Amendments.

"Whether a given statute operates prospectively or retrospective-

ly, is one of legislative intent. In determining such intent, the general rule is that unless there is a clear manifestation by the terms of the Act, or its legislative history, that it was to be retrospective in effect, it must be considered to operate prospectively only." United States v. Mitchell, D.C., 86 F.Supp. 453, 455.

In reviewing the legislative history of the amendment it is clearly manifested that it was the intent of Congress to adopt the amendment because the Ship Mortgage Act of 1920 offered no remedy to American "holders" of mortgages on foreign flag vessels and that the amendment is designed "to correct the situation". U.S.Code Congressional and Administrative News, 83 Congress, Second Session, 1954, Vol. 2, pages 2451–2453.

Also in the legislative history cited is included a letter from Sinclair Weeks, Secretary of Commerce to the Hon. Alvin F. Weichel, Chairman, Merchant Marine and Fisheries Committee, House of Representatives of March 4, 1954, which states:

"The United States Government has a substantial interest in the matter, as a holder of such mortgages. Through sales of vessels to foreign buyers under the Merchant Ship Sales Act of 1946, the United States represented by the Maritime Administration holds mortgages which secure payment of balances of the purchase price of such warbuilt vessels aggregating about $125 million."

It was doubtless therefore the congressional intent that the amendment apply to mortgages in being and that Congress was providing a forum for the protection of American capital that had already been invested.

The fact that Congress refrained from using language that would prevent its application to existing mortgages, as was done in 46 U.S.C.A. § 981 in the original Ship Mortgage Act of 1920 when the original Act was specifically prevented from applying "to any existing mortgage", further emphasizes the intent of Congress that it apply to all foreign mortgages complying with the terms of the amendment when it uses the unqualifying phrase making it applicable to "any mortgage, hypothecation, or similar charge", and to avoid the limitations imposed by the wording in the original Act Congress said that these foreign mortgages embraced in the amendment shall be "in addition" to the preferred mortgages made pursuant to the provisions of the original Ship Mortgage Act.

### IV

The hearings held on May 11, 1954 before the House Committee on Merchant Marine and Fisheries on H.R. 6276 and before the Senate Sub-Committee on Water Transportation on April 8, 1954 on S. 2407 and the legislative history quoted supra, are emphatic in their expression that the intent of Congress was that the act be remedial.

"The purpose of this bill is to furnish a suitable remedy in the courts of the United States for the enforcement of ship mortgages on foreign-flag vessels." House Report No. 1662. U.S.Code Congressional and Administrative News, Vol. 2, p. 2451, 83d Congress, Second Session, 1954.

In further support of the remedial aspect of the amendment and also lending strength to its application to mortgages *in esse* is a statement from the Department of Justice by letter of February 25, 1954 from Deputy Attorney General William P. Rogers, to Hon. John W. Bricker, Chairman, Committee on Interstate and Foreign Commerce, U. S. Senate and reported in the hearings before a Sub-Committee on S. 2407 of Thursday, April 8, 1954:

"The purpose of the bill is to provide a forum on the admiralty side of the United States District Courts for the enforcement of mortgages on foreign ships. The matter is of

considerable financial importance to the United States. The Maritime Administration has sold many vessels to foreigners who have registered them in foreign countries. The Administration holds mortgages for part of their purchase price. The foreign mortgagors do not maintain offices in the United States, but the vessels covered by the mortgage often arrive in United States ports where they can be arrested and attached and foreclosure could be effected if a satisfactory forum were available."

In a later paragraph the same letter said:

"It might be well to make it clear that this bill will merely provide a forum on the admiralty side for litigation as to ship mortgages; that it does not give foreign-ship mortgages the same order of priority over repair and other liens which is now given to preferred ship mortgages on United States-flag vessels; and that in the adjustment of priorities the admiralty court is to follow the established admiralty rules relative to general priorities between maritime liens on foreign vessels which are sold by the court. The admiralty courts of this country have well-established rules respecting the relative priorities in cases where foreign ships are sold by the courts of this country. (See The City of Athens, D.C.D.Md.1949, 83 F.Supp. 67; The San Francisco, 4 Cir., 1950, 179 F.2d 284."

In the case of Pennsylvania Greyhound Lines v. Rosenthal, 14 N.J. 372, 102 A.2d 587, 591, in an action for contribution under the Joint Tortfeasors Contribution Law of 1952, N.J.S.A. 2A:53A–1 et seq. and where the act was passed pending appeal from a judgment in the lower court it was held:

"The general rule is that statutes are to be deemed operative *in futuro* only; but, absent a clear indication of a legislative intent *con-*

*tra,* a remedial and procedural statute is ordinarily applicable 'to procedural steps in pending actions,' and is given retrospective effect 'insofar as the statute provides a change in the form of remedy or provides a new remedy for an existing wrong.'"

In the case at bar the only injury that can be said to be done to libellant, Rebe, is to change the order of distribution of funds resulting from the sale of the Sabrina and that if the intervenor, Swiss Bank, is adjudged to have a "preferred mortgage" the priorities of the parties will be affected.

"The creation of liens for services on the high seas, as for seaman's wages, is on the same theory governed by the law of the ship's flag. But though international comity requires that the creation of a lien by a foreign law be recognized, the priority which it will be given in the distribution of proceeds is adjusted by the law of the forum at which the vessel is libeled and sold. Thus in a recent case where a Russian ship mortgaged in England was libeled and sold in Scotland, the law of the forum was applied and the English mortgagee preferred to an intervening Danish materialman." Article 4, Vol. 26, Harvard Law Review, February 1913, page 358.

In adopting the above theory the court in Walter H. Marquis v. The Ship Astoria, in Exechequer Court of Canada, Dec. 17, 1930, said:

"It is laid down that the question of priority of lien is treated as relating only to the remedy determined by the law of the forum."

In the case of Beatty v. United States, 8 Cir., 191 F.2d 317, 320, the court held:

"The general rule of course is that statutes ordinarily will be presumed to have only a prospective and not a retroactive operation unless a contrary legislative intention is apparent. But this rule does not

apply to statutes which effect merely changes in remedies or modes of procedure for enforcing existing liabilities. Existing liabilities, whether they accrue before or after the enactment of such a statute, will be subjected to its operation, unless they are exempted by terms or implication, or unless the application of the statute thereto will work a gross injustice."

A bankruptcy statute enacted after a claim had accrued giving priority to a creditor's claim is applicable as the statute affects merely the remedies; In re Inland Dredging Corporation, 2 Cir., 61 F.2d 765, 88 A.L.R. 254, also City of Chelsea v. Dolan, 1 Cir., 24 F.2d 522 holds that an amendment to the Bankruptcy Act, 11 U.S.C.A. § 104, giving wages priority over taxes was applicable to pending cases in which no order of distribution had been made.

### V

 In the case at bar it is true that the application of the amendment to a mortgage in being at the time of the passage of the act lends to the mortgage a priority but it does not take away a priority or status that accrued to libellant, Rebe, before the act, for Rebe had no lien until the perfection of the foreign attachment on September 3, 1954, more than two months after the adoption of the amendment. Rebe's action arose out of contract, no lien existing until the attachment, which occurred after the passage of the act, thus its effect on Rebe's priority was prospective in operation and it cannot therefore be said that libellant, Rebe, has been divested of a substantive right acquired prior to the amendment.

### VI

 In applying the rule that statutes mean what they say and the best evidence of legislative intent is the language of Congress, how can we interpret the amendment to apply only to American mortgagees?

Public Law 447 clearly states that "in addition" to preferred mortgages included in the original act "any mortgage, hypothecation, or similar charge" created as security upon "any documented foreign vessel" is a preferred mortgage if it has been duly and validly executed in accordance with the laws of the foreign nation under which the vessel is documented and duly registered in accordance with such laws in a public register either at the port of registry of the vessel or at a central office.

The language used is singularly free from ambiguity. It does not say any mortgage executed in compliance with the previous provisions of the act; it does not say that the vessels embraced are only those under mortgage to American mortgagees, and it does not say that the documents of the vessel must be endorsed in accordance with the previous provisions of the act. The court therefore should not read into the amendment things that are not there.

The amendment was patently designed to do certain things "in addition" to those accomplished by the original act. To this court it is apparent that Congress recognizing the efficacy of the Act of 1920 and in full sympathy with the international attempts toward uniformity in establishing a suitable forum for the enforcement of all properly executed and registered mortgages decided to amend the existing act.

There existed the need and the desire on the part of Congress to protect American mortgagees and American capital but in its recognition of the international exigencies that are constantly facing an increasingly closer knit business unity and in an attempt to rectify an almost impossible situation long recognized by world financiers and admiralty lawyers (See Report of Committee on the Enforcement of Foreign Mortgages, The Maritime Law Association of the United States, May 5, 1950, May 4, 1951, May 2, 1952, May 14, 1954. Also Report of the Delegates of the said association to the Conference of

the Comite Maritime International at Amsterdam, September, 1949.) the whole tenor of the thinking has been to the effect that a mortgagee of a vessel under a mortgage valid by the law of her flag should have the right to enforce his security in any jurisdiction in which the vessel may be found and the vessel should be detained within the jurisdiction until proper security has been lodged or the court has adjudicated on the matter.

Congress by the simple expedient of amending an excellent and existing act has established an international forum in the United States District Courts and although as pointed out in Rebe's brief, it may multiply greatly the litigation in this court by reason of the presence of the Panama Canal, it is believed that such was the intent of Congress and hoped that the increased opportunities for litigation on behalf of the aggrieved will prove beneficial.

As argued in Swiss Bank's brief, to construe the amendment to Subsection K to mean that foreign mortgages must comply with Subsection D of the Act of 1920 would be to hold that Congress by indirection is attempting to legislate for every maritime nation in the world since the presence or absence of a requirement for endorsement is a matter for the legislative body of the country of the foreign flag vessel and such a holding would again constitute a "reading into" the act something that is not there for Congress has only set up the requirement that the mortgage be "duly and validly executed" under the laws of the foreign nation and that it be duly registered in accordance with such laws in a public register either at the port of registry of the vessel or at a central office.

The 1920 Act was drawn to fit American flag vessels and American mortgagees but any attempt to fit its provisions into the operation of the amendment relating to foreign flag vessels will destroy the purposes of the act and lead to utter confusion.

## VII

The court finds no fault with the intervening libel of the Swiss Bank as a pleading.

The amended intervening libel alleges that the bank is the holder of a valid mortgage, that the mortgage is properly recorded, that it is a preferred mortgage on the vessel under both the Panamanian and American law, that the terms of the mortgage were breached by the mortgagor and that the mortgagor has failed to pay the amounts due under the mortgage after demand in accordance with the terms of the mortgage.

The language is clear and alleges facts showing a legal duty, a default and resultant injury caused by the default.

The exceptions to the intervening libel and petition of the Swiss Bank on the part of the libellant Rebe are overruled.