Charles F. KRAUSE, Administrator and Personal Representative of George T. Stubbs for and on behalf of Janet Lenora Baker Stubbs, and the minors, Mary Margaret Stubbs and Laurie Lucille Stubbs, Libellant,

v.

REPUBLIC AVIATION CORPORATION and Sud-Aviation, Societe Nationale De Constructions Aeronautiques, Respondents.

No. 60–A–1133.

United States District Court
E. D. New York.
July 12, 1961.

Speiser, Quinn & O'Brien, New York City, for libellant; Robert A. Dwyer, New York City, of counsel.

Coudert Brothers, New York City, for respondent Sud-Aviation, S. N. C. A.; Alexis C. Coudert, William Rand, Jr., New York City, of counsel.

BARTELS, District Judge.

Hearing on exceptions and objections by respondent Sud-Aviation, Societe Nationale De Constructions Aeronautiques (herein sometimes "Sud-Aviation") to the libel herein.

The libel asserts two claims each based upon breach of warranty, *res ipsa lo-*

*quitur* and specific acts of negligence, seeking damages for the wrongful death of libellant's decedent. Each claim asserts that Sud-Aviation manufactured and Republic Aviation Corporation (herein "Republic") owned a certain helicopter known as Alouette II which was leased to the employer of libellant's decedent, that said helicopter was not properly designed, did not operate properly, was returned to Republic for repair, and that after Republic repaired the helicopter, the helicopter because of negligence or defect, was unairworthy and crashed into the Gulf of Mexico twenty miles south of Leeville, Louisiana, causing the death of libellant's decedent.

The First Cause of Action is pleaded under the Death on the High Seas Act, 46 U.S.C.A. § 761 et seq., and is objected to on the grounds that the location of the crash is not on the high seas but within the territorial waters of Louisiana. This objection is based on the fact that Louisiana, by statute (Title 49, Section 1, Louisiana Revised Statutes) claims a boundary which extends three marine leagues (nine nautical miles) into the Gulf of Mexico, and is answered by the libellant's assertion that even though the death occurred within three marine leagues from the coast it occurred more than one marine league (three nautical miles) from the shore and therefore the Federal statute is applicable.

The Second Cause of Action is pleaded under Louisiana's wrongful death act (9 L.S.A.–Civil Code art. 2315) and prays that if there be no jurisdiction in this Court under the Federal Death on the High Seas Act, the action be transferred to the civil side of this Court on the basis of diversity of citizenship. Respondent objects to this Cause of Action on the ground that the Court lacks jurisdiction over its person and that an action under the State statute, pleaded as a civil action, may not be brought on the admiralty side of this Court. In support of this objection it asserts that jurisdiction was originally obtained by a writ of foreign attachment, and that only after its attorneys entered an appearance upon the understanding that the attachment would thereupon be dissolved did respondent receive a copy of the libel and learn of the existence of a cause of action pleaded under the Louisiana wrongful death act. It therefore contends that since this action could not have been commenced on the civil side of this Court by a writ of foreign attachment it cannot now be transferred to the civil side. Libellant answers that the action is cognizable in admiralty and that the prayer for transfer was for the sole purpose of preserving libellant's jury right.

Respondent's third objection to the libel prays for the deletion of all references to "warranties" contained in both Causes of Action. It contends that there was no privity of contract between it and libellant's decedent, which privity is essential to any claim of breach of warranty under the law governing the contract, alleging that this law is the law of France. Libellant counters that not only were warranties made directly to decedent's employer and decedent, but that strict privity of contract is not required herein.

### Action under the Federal Death on the High Seas Act.

As previously indicated, this is a suit in admiralty commenced by the service of a writ of foreign attachment. The pertinent provisions of the Death on the High Seas Act, 46 U.S.C.A. §§ 761 and 767, read as follows:

"§ 761. Right of action; where and by whom brought

"Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative

against the vessel, person, or corporation which would have been liable if death had not ensued."

"§ 767. Exceptions from operation of chapter

"The provisions of any State statute giving or regulating rights of action or remedies for death shall not be affected by this chapter. Nor shall this chapter apply to the Great Lakes or to any waters within the territorial limits of any State, or to any navigable waters in the Panama Canal Zone."

The libel alleges that the accident occurred "approximately twenty (20) miles south of Leeville, Louisiana" and the Exceptive Allegations and Exhibit A attached thereto establish the scene of the accident approximately five nautical miles from the Louisiana coast, which is admittedly "beyond a marine league from the shore" of that State. Apparently there is no question as to the scene of the accident.

The respondent argues that the place of the accident, although five nautical miles from the coast or shore, is nevertheless within the territorial limits of the State and that hence Louisiana's wrongful death act (9 L.S.A.–Civil Code art. 2315) is applicable and not the Federal Death on the High Seas Act. In support of this contention respondent relies upon Section 767 and claims that according to the legislative discussion with respect to that section, the phrase "any waters within the territorial limits of any State" therein contained carved out from Section 761 accidents occurring within the jurisdiction of the State even though they occurred considerably more than three miles from shore. The libellant also cites congressional debates to establish that that particular phrase

merely intended to include the traditional three-mile limit and no more. The validity of the respondent's contention depends upon the determination of the shore or coastline of Louisiana in the Gulf of Mexico beyond a marine league. The unusual history of the territory of Louisiana, as well as the 1954 Louisiana statute establishing its boundary at three leagues (nine nautical miles) seaward of the line between the inland and open waters (La.Rev.Stat. Tit. 49, § 1 [1954]) has been cited by the respondent as fixing Louisiana's coast beyond a marine league from the shore and also beyond five nautical miles, thus placing the accident within the jurisdiction of the State of Louisiana.

The pre-admission and post-admission history of Louisiana's claim to a coastline beyond the traditional three-mile limit has been traced and elaborately discussed in United States v. States of Louisiana, etc., 1960, 363 U.S. 1, 121, 80 S.Ct. 961, 4 L.Ed.2d 1025, 1096 [1]. It is true that this case does not purport to decide any controversy between persons other than the United States and the State of Louisiana. Nevertheless, it did decide that the Act of Congress admitting Louisiana to the Union in 1812, fixed as the State's seaward boundary, not a line three leagues from the coast but "at, and not somewhere in, the Gulf of Mexico" (363 U.S. at page 74, 80 S.Ct. at page 1002), and that moreover Louisiana's 1954 statute establishing the State's boundary at three leagues seaward "of the line between inland and open waters" entitled Louisiana "to submerged-land rights to a distance no greater than three geographical miles from its coastlines, wherever those lines may ultimately be shown to be." (363 U.S. at page 79, 80 S.Ct. at page 1005)[2] This is a decision

---

1. Based upon the Submerged Lands Act, 43 U.S.C.A. §§ 1301–1315, dealing with State and Federal rights in submerged lands. See also United States v. State of Louisiana, 1950, 339 U.S. 699, 70 S. Ct. 914, 94 L.Ed. 856, which was an action for declaration of rights and to enjoin assertion by Louisiana of dominion over minerals under costal waters.

2. Respondent claims that the Supreme Court postponed consideration of the effect of the 1954 statute. While this is true with respect to the establishment of Louisiana's coastline between inland and

of the highest court fixing the territorial or seaward boundary line of Louisiana. The determination of that boundary for the purposes of this case would involve no different history or facts and consequently that decision is an authoritative finding upon this issue. Confronted with this decision, it is impossible for this Court to state that Louisiana's territorial jurisdiction extends beyond the traditional three-mile limit for the purpose of applying its wrongful death statute. This conclusion renders immaterial the interpretation placed upon the exceptive provisions of Section 767 of the Federal Death on the High Seas Act. Accordingly, the Court concludes that the accident having occurred "on the high seas beyond a marine league from the shore" of Louisiana, the Federal Death on the High Seas Act is applicable and this Court has jurisdiction over the first cause of action thereunder.

Having sustained jurisdiction of the libel under the Federal Death on the High Seas Act, it is unnecessary to pass upon the objections to the Second Cause of Action which is pleaded in the alternative.

## Warranties.

Libellant's third objection is directed to the allegations intermittently sprinkled in the libel based upon breach of warranty. Respondent alleges, and attaches a bill of sale to prove, that it sold the helicopter in question to Republic in France and that consequently there was no privity of contract between the respondent and the decedent and that such privity is a *sine qua non* under the law of France for recovery for breach of warranty. "Exceptions in admiralty are in the nature of a demurrer and address themselves to the sufficiency of the pleading and the court must for the purposes of

the motion assume as true all properly pleaded material allegations of the pleading in question." Rederiaktierbolaget v. Compania De Navegacion Anne, S. A., D.C.Canal Zone 1955, 139 F.Supp. 327, 331; The S.S. Nea Hellis, 2 Cir., 1941, 116 F.2d 803, 805; Hearty v. Ragunda, D.C.N.Y.1953, 114 F.Supp. 869, 871.

Article VII of the libel alleges: "Upon information and belief, that at the times hereinafter mentioned, respondents * * * were and still are engaged in a joint venture in the business, among other things, of designing, manufacturing, altering, testing, inspecting, repairing, assembling and selling * * * helicopters * * * and pursuant to the said joint venture employed various agents and employees and representatives. Alternatively, respondent, Republic Aviation Corporation, * * * was and acted as the agent of respondent, Sud-Aviation, * * * ". Article XI alleges that the helicopter in question "was leased by Republic Aviation Corporation, and Sud-Aviation * * * ". Article XII refers to both respondents as "the manufacturers" and states that they "warranted that the said helicopter would be free from defects in design and other defects arising from the manufacture thereof. Upon information and belief, the manufacturers agreed that they would correct or repair such defects, including defects in design discovered or becoming apparent." Article XV recites that the helicopter developed ground resonance, was returned for repair and was thereafter "returned to Louisiana for further demonstration use and was warranted to be free of defects and the aircraft was declared airworthy by the representatives of the respondents." Lastly, Article XVI alleges that "the employer of the decedent * * * with the knowledge and the approval of the manufacturers

open waters, it did not postpone the determination of Louisiana's state boundary at three leagues seaward "of the line between inland and open waters". Furthermore, on December 12, 1960 it entered a final and determinative decree in which it expressly provided that " * * * As used in this decree, the term 'coast

line' means the line of ordinary low water along that portion of the coast which is in direct contact with the open sea and the line marking the seaward limit of inland waters." United States v. States of Louisiana, etc., 364 U.S. 502, 81 S.Ct. 258, 259, 5 L.Ed.2d 247.

and in reliance upon the primary duty of the manufacturers \* \* \* and upon the superior knowledge and skill of the manufacturers \* \* \* and upon the agreements, representations, warranties and undertakings of the manufacturers as aforesaid, restored the said helicopter" to use.

Respondent claims that the law governing the claim of breach of warranty is the law of France since the helicopter was sold under an agreement which was made and was to be performed in France.

 In applying conflict of laws rules the Federal court must apply the rules of the State in which it sits. Klaxon Co. v. Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. It appears that the conflicts rule that would be applied in New York with regard to the validity, construction and interpretation of a contract and also a breach of warranty in connection therewith would be the law of either the place where the contract or warranty was made or the place of the "grouping of contacts", or in other words the "center of gravity", with respect to the transaction. Auten v. Auten, 1954, 308 N.Y. 155, 124 N.E.2d 99, 50 A.L.R.2d 246; see Jansson v. Swedish American Line, 1 Cir., 1950, 185 F.2d 212, 219–220, 30 A.L.R.2d 1385.

Is is argued by respondent that in applying these principles the law of France will govern and under this law no warranty is available to the decedent because there was no privity of contract between the decedent and the respondent. However, the libel makes no allegation as to a contract of sale but alleges that respondent, as either a joint venturer or acting through Republic as agent, was also a party to the lease and repair of the helicopter and is thus liable for the breach of all warranties allegedly made pursuant thereto. It is not alleged where any of these warranties were made. When these allegations are considered as a whole, it is impossible to determine to what transaction the warranties attach or where the transactions occurred. It is true that it does not appear from these allegations that there was any privity of contract between the respondent and the decedent. Nevertheless, it is impossible in the absence of further facts to determine what law would be applicable to the warranties and it consequently cannot now be said that such law would require privity before the warranties would be available to the decedent. In view of these deficiencies the exceptions and objections must be overruled.

Settle order in accordance with this opinion within 20 days on 2 days' notice.