## FRANKLIN FIRE INS. CO. v. ROYAL MAIL STEAM PACKET CO.

### No. 336.

Circuit Court of Appeals, Second Circuit.
May 9, 1932.

Single & Hill, of New York City (Robert E. Hill and C. Welmore Robinson, both of New York City, of counsel), for appellant.

Slayton & Jackson, of New York City (G. Noyes Slayton, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The libelant is an underwriter which, having paid the shipper, sues the carrier upon the bill of lading for damages to a parcel of coffee on a winter voyage from Haitian ports to Antwerp. The coffee was stowed in hold No. 1, just abaft the forepeak, and separated from it by a collision bulkhead. After touch-

ing at St. Thomas in the Virgin Islands, the ship left the Caribbean on January 21st, and on the 22d, being by the stern and meeting heavy weather, she filled the forepeak. The bad weather continued for four days, and three days later, on the 28th, water was discovered in the hold, which caused the damage in suit. The wind on the 22d was five on the Beaufort scale (a "fresh breeze"), and not so strong thereafter; but the ship pitched and strained heavily and shipped water, until the 26th, when the weather moderated and continued moderate until the 28th. It was at no time greater than is usual at that season in the Atlantic. On a survey seven rivets were found to have started in a horizontal stiffener on the bulkhead, and four more had dropped out completely. The water had apparently come in through the last. The ship had been surveyed at the beginning of her westward voyage at Rotterdam, where repairs were made to her forepeak tank, but she had had continuous heavy weather for ten days before reaching America. The bill of lading contained exceptions against "perils of the seas," and against "unseaworthiness of the ·ship (provided all reasonable means have been taken by the shipowners or their agents to provide against such unseaworthiness)." It will be observed that the language of the second exception does not include the phrase, "at the commencement of the voyage," or its equivalent; and unless there is some distinction between exceptions against defects in hull or gear and those against unseaworthiness as such, the doctrine of The Caledonia, 157 U. S. 124, 15 S. Ct. 537, 542, 39 L. Ed. 644, and The Carib Prince, 170 U. S. 655, 18 S. Ct. 753, 755, 42 L. Ed. 1181, rules.

The case therefore turns on two questions: Whether there is indeed such a distinction; and whether, if not, the ship was seaworthy. In The Carib Prince the exception was against "latent defects in hull, tackle, boilers, and machinery or their appurtenances"; in The Caledonia, against "steam boilers and machinery or defects therein." The first was apparently intended to, and perhaps did, include all those respects in which a ship must be fit; it was substantially an exception against unseaworthiness, so far as that was not patent. It is hardly possible to argue therefore that a different rule applies, merely because the covenant of seaworthiness refers traditionally to the commencement of the voyage, The Steel Navigator, 23 F.(2d) 590, 591 (C. C. A. 2), and because it should therefore be so construed though its equivalent is not. Though limited to the period after breaking ground, the exception would still have some effect, for unseaworthiness developing on the voyage would cast the carrier, unless the bill of lading exonerated him. Moreover, even if the exception in The Carib Prince does not run pari passu with that at bar, the reasoning is plainly applicable to the whole of which the important parts at least were there before the court. It seems to·us too tenuous a distinction for practical application to adopt a different canon, and, so far as we can find, it has never been suggested in the books.· Hence we hold that the exception did not cover a breach of the implied covenant, and that if the ship was in fact unseaworthy when she lifted the coffee, she was liable.

If the definition generally adopted (The Silvia, 171 U. S. 462, 19 S. Ct. 7, 43 L. Ed. 241) be taken literally, there is no escape; the ship was not reasonably fit for her voyage, because the voyage was of exactly the kind that she should expect. She suggests nothing unusual after she broke ground which could account for the failure of the rivets, and she has the burden of proving performance of the covenant. The Edwin I. Morrison, 153 U. S. 199, 14 S. Ct. 823, 38 L. Ed. 688. The judge applied the doctrine as it is usually stated, and we think he was right. The Sandfield, 92 F. 663 (C. C. A. 2), was quite another case; the ship had there encountered weather of the extremest severity, such as some of the crew had never known before. All that we said in Grubnan v. The Ontario, 115 F. 769, upon the issue of unseaworthiness was in truth obiter, because the case arose under a bill of lading excepting against it at the commencement of the voyage, if due diligence had been used. There was no doubt that every reasonable effort had been made to make the ship fit. It is nevertheless true that Brown, J. (The Ontario [D. C.] 106 F. 324), said that the ship was seaworthy, notwithstanding the failure of a number of rivets in the tank top under no more than usual strains. The discussion seems to us to have confused the ship's actual condition with the diligence used, and perhaps the whole is to be read as applicable only to the last. If so, there can be no doubt that it was correct; but in any case we do not feel ourselves concluded by the dicta. Perhaps The Caledonia and The Carib Prince do no more than introduce a new phrase into bills of lading, which maritime folk would read into them anyway; but we are not free to consider that possibility; for us the law stands as it is there declared.

It is too plain for argument that the loss did not arise from "perils of the sea," and that the first exception is not available to the respondent.

Decree reversed; cause remanded, with directions to enter a decree for the libelant.