## THE GUANANCITA.

### No. 69.

District Court, S. D. Florida, Tampa Division.

Feb. 12, 1947.

---

Calvin Johnson, of Reeves, Allen & Johnson, of Tampa, Fla., for libelant.

T. Paine Kelly, Jr., of McKay, MacFarlane, Jackson & Ferguson, all of Tampa, Fla., for libelee.

DE VANE, District Judge.

This libel is to recover damages of a cargo of candy purchased by libelant in Cuba and consigned to him at Charleston, South Carolina. The candy was shipped via Motor Vessel, "Guananchi" from Havana, Cuba to the port of Port Tampa, Florida and from the latter port to Charleston, South Carolina by rail. Upon arrival at the port of Port Tampa, Florida part of the candy was found to be in a wet and damaged condition and the libel arises out of the damages sustained while the candy was aboard the Motor Vesseli "Guananchi." The defenses urged are that the candy was damaged, first by the perils of the sea; second by its own inherent vices.

### Question of Liability.

The Amended Libel alleges that 2709 cases of candy were delivered in good order and condition to the Motor Vessel, "Guananchi" at Havana, Cuba for transportation to the port of Port Tampa, Florida and the entire lot of candy being shipped under bond, bill of lading attached, was sent on to Charleston, South Carolina. Upon its arrival at Charleston it was inspected by the Pure Food and Drug Department before being delivered to libelant, and 699 cases of the candy were detained, condemned and destroyed, because they had been damaged and contaminated by salt water. The Pure Food and Drug Department also detained and condemned 417 cases of the candy, but libelant was allowed to return this lot to the manufacturers in Cuba. The evidence further shows that 62 cases of candy were lost in transit. Libelant seeks to recover the loss and damages suffered by him in connection with these 1178 cases of candy.

### Candy Condemned and Destroyed.

The evidence shows that the 699 cases of candy condemned and destroyed by order of the Pure Food and Drug Department were all damaged by salt water while on board the "Guananchi" and the issue presented as to this lot of candy is whether it was damaged as a result of the perils of the sea, in which case libelee would not be liable.

The evidence shows that the "Guananchi" put out from the port of Havana, Cuba for the port of Port Tampa, Florida some time during the day of December 10, 1943. After several hours at sea and because of heavy seas and a high wind the motor vessel returned to the port of Havana during the same day. When the motor vessel left Havana on the morning of December 10, 1943 the Master was ill and could not go on the voyage and an acting Master was placed in charge of the vessel. Before it started out again, on the following day, the Master had sufficiently recovered to take command of the vessel.

The testimony is to the effect that when the vessel was about fifteen miles out of the Port of Havana it encountered a sudden storm and heavy seas and that waves passed over the deck at a speed of twenty-five miles per hour. There is also testimony to the effect that the waves damaged a door in the aft deckhouse and water entered the crew's quarters. This deckhouse is immediately over Holds #3 and #4 and incloses the hatchway to Hold #4. Libelee contends that a great quantity of water entered through the broken door and hatchway and found its way into Hold #4. Libelee offered considerable testimony to establish the seaworthiness of the vessel at the time it left the port of Havana. The vessel was subjected to the usual inspection required of such vessels and was found to be seaworthy. The Court is asked to conclude on this evidence that the damage done to the candy was the result of the perils of the sea brought about by the heavy seas encountered when the vessel first left the port. There is testimony to the effect that the candy had been damaged by sea water upon its return to the port of Havana.

The candy consisted of two lots consigned by different manufacturers. One lot being known as the "Lucerno" brand and the other the "Alicia" brand. The evidence shows that 1084 cases of the "Lucerno" brand and 425 cases of the "Alicia" brand were in Hold #3; that 300 cases of the "Alicia" brand were in Hold #4; and that

930

900 cases of the "Alicia" brand were on the vessel's deck. The evidence does not disclose the extent of damage done to the candy stored in either Hold #3 and #4 or on deck, but does show that most, if not all, of the damaged candy was in Holds #3 and #4. The evidence further shows that 238 cases of "Alicia" and 461 cases of "Lucerno" candy was condemned and destroyed by order of the Pure Food and Drug Department.

■ The testimony shows that the "Guananchi" is a type of vessel that allows waves to wash over her deck in rough weather where no peril of the sea could be said to exist. Therefore, in order for the motor vessel to be seaworthy it is necessary that its hatchways be watertight. Particularly is this true when the vessel carries cargo that is easily damaged by salt water. Libelee lays great stress upon the fact that a door in the aft deck was damaged in the heavy seas on the motor vessel's first trip out from the port of Havana. There is no testimony showing the condition of the door prior to the damage to it by the waves, but the question of damage to the door is unimportant to a decision of this case due to the fact that covering of the hatchway to Hold #4, as well as to all other holds, should have been of such construction as to have prevented salt water entering the hold.

The question of the damage to the door to the crew's quarters becomes even less important when it is considered that most of the damage occurred in Hold #3. None of the "Lucerno" brand candy was in Hold #4 and more of this lot of candy was damaged than of the "Alicia" brand and due to the extensive damage to the "Lucerno" candy in Hold #3 it is reasonably deductible that most of the damaged candy of both lots was in this hold. Counsel for libelee argues that all the damaged candy was in Hold #3 and #4 and that none of the candy on deck was damaged. Conceding this contention of counsel for libelee to be true it appears to the Court that the covering for the hatchways to Holds #3 and #4 had been improperly fastened down or were unseaworthy.

■ As stated above, the evidence shows that the candy was received on board the motor vessel in good order and condition and that it was damaged while in the custody of libelee. Where goods are delivered to a vessel in good condition and discharged in bad condition the burden is upon the vessel to disprove negligence. James Richardson & Sons Co. v. Conners Marine Company, 2 Cir., 141 F.2d 226.

The evidence in this case falls far short of showing that the "Guananchi" encountered perils of the sea within the meaning of that term in admiralty cases of sufficient severity to relieve it of liability. The Skipsea, 2 Cir., 9 F.2d 887; The Leerdam, 5 Cir., 17 F.2d 586; Franklin Fire Insurance Company v. Royal Mail Steam Packet Company, 2 Cir., 58 F.2d 175; Ore Steamship Corporation v. D/S/A/S Hassel, 2 Cir., 137 F.2d 326 and The Georgian, D.C., 4 F.Supp. 718.

■ The Court holds that libelee has failed to carry the burden to disprove negligence, imposed upon it under admiralty law, and that libelant is entitled to recover for this lot of candy.

Candy Returned to Manufacturer.

As stated above, the Pure Food and Drug Department seized 417 cases of the "Lucerno" brand candy and refused to permit its sale. However, the Department did permit libelant to return this candy to the manufacturer in Cuba, for which the libelant was reimbursed for the cost of the candy to him, plus certain expenses he had incurred in connection therewith. Libelant claims only the loss of the profit on this lot of candy.

The evidence shows that this candy was packed with a lime bag in each ten pound carton of candy. The lime bag was placed in each carton to absorb excessive moisture and to protect the candy. The lime bags either became saturated with water and the lime water dripped down on the candy or the lime sifted out of the bags on to the candy. The evidence is not clear as to which happened, but it does show that the candy was contaminated with lime and was condemned for this reason.

■ Libelant contends that the lime bags came in contact with salt water, which caused the damage to the candy. However,

libelant failed to submit satisfactory proof as to what caused the damage as to this lot of candy and the Court holds that he is entitled to recover nothing on account thereof.

### Candy Lost in Transit.

The testimony shows that 62 cases of candy were lost in transit somewhere between Havana, Cuba and Charleston, South Carolina. Libelant failed to carry the burden of proof as to when, where or how this candy was lost and at the oral argument of this case, admitted that he had failed to carry the burden of proof and abandoned any claim for the 62 cases of candy lost in transit.

### Measure of Damages.

The evidence shows and libelee does not deny that the candy destroyed was worth at least 32¢ per pound at the port of Port Tampa, Florida and in Charleston, South Carolina. Libelant claims he is entitled to recover the value of the candy. Libelee contends that if the motor vessel is liable at all it is liable only for the cost of the candy to libelant. The cases sustain libelant's position that he is entitled to recover the value of the candy. Kemsley, Millbourn & Company, Ltd. v. United States, 2 Cir., 19 F.2d 441; Vacuum Oil Company v. Rotterdamsche Lloyd, 2 Cir., 31 F.2d 974; Weirton Steel Co. v. Isbrandtsen-Moller Co., 2 Cir., 126 F.2d 593.

### Special Damages.

Libelant claims he was compelled to incur additional expenses in connection with the seizure, condemnation and destruction of the 699 cases of candy, summarized as follows:

| | |
|---|---|
| Hauling to incinerator | $ 55.27 |
| Telephone & Telegraph | 226.27 |
| Storage on destroyed candy | 63.01 |
| Handling on destroyed candy | 18.57 |
| Insurance on destroyed candy | 105.57 |
| Freight Tampa to Charleston, plus tax (destroyed candy) | 275.72 |
| Handling charges at Tampa on destroyed candy (including bags) | 42.94 |

The expenses incurred in connection with the handling, storage and destruction of the candy are allowed as necessary expenses brought about by the action of the Pure Food and Drug Department in detaining, condemning and having the candy destroyed. They are summarized as follows:

| | |
|---|---|
| Hauling to incinerator | $ 55.27 |
| Storage on destroyed candy | 63.01 |
| Handling on destroyed candy | 18.57 |
| Insurance on destroyed candy | 105.57 |

The remaining items are disallowed. Most of these are not proper damages and as to those that might be so classified the evidence relating thereto is not sufficient for the Court to approve the claim.

### Interest.

The allowance of interest in Admiralty cases is conceded by the parties to be discretionary. Libelant claims interest at the full rate authorized by the law of Florida although fully recognizing and conceding the power of the Court to allow a less amount. Libelee contends that much of the delay in bringing this suit to final hearing lies at the door of libelant. There is some justification for this claim. Both parties have been at fault in that regard. The libel was originally filed in this case in December, 1943, and the case was not brought to final hearing until November, 1946. The original delay is chargeable to libelant. The subsequent delay is chargeable to libelee.

Under Florida law amounts recovered in suit for damages based on contracts bears 8% interest until the claim is reduced to Judgment and 6% thereafter. The Decree entered in this case, therefore, will bear 6% interest from its date of entry until paid. The rate of interest has been less than 6% during the last several years and libelee contends that the Court should take this into consideration in fixing the interest allowed on the damages awarded libelant. It is the opinion of the Court that the proper interest to be allowed in this case is that authorized by the law upon Judgments and Decrees and the Court holds that 6% is the fair rate of interest.

It is the further opinion of this Court that libelant should be penalized to some extent for the delay in bringing this case to final

conclusion. The Court, therefore, approves a rate of interest of 3% for the period from the date of the institution of this libel to the entry of a final decree in this case.

An appropriate decree in conformity with this Memorandum Decision will be entered herein.