### SPANISH–AMERICAN SKIN COMPANY, Libelant,

v.

### THE M. S. FERNGULF, her engines, boilers, tackle, etc., A/S Glittre, Fearnley & Enger, Barber-West African Line, Inc., and American-West African Line, Inc., Respondents.

United States District Court
S. D. New York.
July 26, 1956.

Hill, Rivkins, Middleton, Louis & Warburton, New York City, for libelant, David L. Maloof, New York City, Robert J. Byrnes, Brooklyn, N. Y., of counsel.

Haight, Deming, Gardner, Poor & Havens, New York City, for respondents, Tallman Bissell, Karl V. Kerth, New York City, of counsel.

DAWSON, District Judge.

This is an action by a consignee of a shipment of skins against the ocean carrier for failure to outturn a shipment of the weight set forth in the bill of lading issued by the carrier. The order bill of lading recited the number of packages received and indicated a weight noted as "Shipper's Weight". The bill was also stamped with this legend: "Steamer not responsible for weight, quality or condition of contents".

The principal issue in the case is whether the carrier is prima facie liable for failure to deliver to the consignee a shipment of the weight set forth in the bill of lading, even though the weight was described as "Shipper's Weight" and even though the stamp on the bill of lading stated that the steamer was not responsible for the weight.

By consent, the action was dismissed against the respondents Fearnley & Eger, Barber-West African Line, Inc. and American-West African Line, Inc. The remaining respondents are M/S Ferngulf and the owner of the ship, A/S Glittre.

### The Facts.

Libelant, the Spanish-American Skin Company of Gloversville, New York, negotiated by correspondence a contract to buy 500 dozen sheepskins, weighing between 12,000 and 15,000 pounds, from Adeakisanya & Sons of Lagos, Nigeria. Payment for the shipment was to be made by letter of credit negotiated by libelant through Manufacturers Trust Company and payable through the British and French Bank, Lagos, which was agent of Midland Bank, Ltd. of London, England. Payment on the letter of credit was contingent upon the shipper presenting commercial and consular invoices and full sets of "on board bills of lading" together with a government certified weight list showing that the average weight per skin was from two to two and one half pounds.

On March 28, 1952, the seller delivered a quantity of sheepskins in bundles to the M/S Ferngulf. The shipper was given an on board order bill of lading describing the cargo as follows:

"Received, in apparent good order and condition, from Messrs. Adeakinsanya and Sons  *  *  *

Shipper's Description of Goods: Shipper's Weight

| Marks | Number of Packages | Description | Gross Weight | |
|-------|--------------------|-------------|--------------|---|
| SASCO | 60 | Bags Genuine Sokoto | Gross | T6.9.0.8 |
| 1/60 | | Origin Sheepskins | Tare | —2.— |
| New York | | 1st Quality | Nett | 6.8.2.8" |

"Shipped on Board"

The bill of lading also bore on it a statement, apparently imprinted by a rubber stamp, reading "Steamer not responsible for weight, quality or condition of contents".

The evidence indicated that the carrier's employees who issued the bill of lading did so without actually seeing the cargo or seeing it loaded on the ship. The bill of lading showed that freight and other charges had been prepaid and showed that the ocean freight was based upon a shipment of 6.4535 tons. The shipper took the bill of lading, his invoice and a consular invoice, and a government weight certificate to its bank

**348**

and received payment against the letter of credit of £2880 for which libelant's account was charged $8,092.80.

When the ship arrived at New York, this cargo was discharged and transported by freight to Gloversville, New York, where it was discovered that the cargo consisted of sixty loosely tied bundles of sheepskins weighing only 2,305 pounds. This would amount to somewhat over one ton rather than the six tons plus which was supposed to have been shipped. It was conceded that the shipment as delivered at Gloversville, New York, was the amount outturned by the ship on its arrival in New York.

The consignee made claim against the vendor, apparently without success. There is some indication in the testimony that the government weight certificate delivered by the vendor to the bank may have been a forgery. The consignee has now brought this action against the carrier basing its claim on the bill of lading and the provisions of the United States Carriage of Goods by Sea Act, 46 U.S.C.A. §§ 1300–1315.

Respondent takes the position that the bill of lading acknowledged only the receipt of sixty packages of sheepskins and that it outturned sixty packages of sheepskins, and that it is not responsible if the weight of these packages was less than the amount described in the bill of lading since that weight was therein described as "Shipper's Weight" and the bill of lading indicated on its face that the steamer was not responsible for the weight.

Discussion.

The Carriage of Goods by Sea Act, which was enacted in 1936, provides, in part, as follows:

"Responsibilities and Liabilities.

"Sec. 3. * * *

"(3) After receiving the goods into his charge the carrier, or the master or agent of the carrier, shall, on demand of the shipper, issue to the shipper a bill of lading showing among other things—

\* \* \* \* \* \*

"(b) Either the number of packages or pieces, or the quantity or weight, as the case may be, as furnished in writing by the shipper.

"(c) The apparent order and condition of the goods: Provided, That no carrier, master, or agent of the carrier, shall be bound to state or show in the bill of lading any marks, number, quantity, or weight which he has reasonable ground for suspecting not accurately to represent the goods actually received, or which he has had no reasonable means of checking.

"(4) Such a bill of lading shall be prima facie evidence of the receipt by the carrier of the goods as therein described in accordance with paragraphs (3) (a), (b), and (c), of this section * * *.

"(5) The shipper shall be deemed to have guaranteed to the carrier the accuracy at the time of shipment of the marks, number, quantity, and weight, as furnished by him; and the shipper shall indemnify the carrier against all loss, damages, and expenses arising or resulting from inaccuracies in such particulars. The right of the carrier to such indemnity shall in no way limit his responsibility and liability under the contract of carriage to any person other than the shipper."

██ This Act was adopted to carry out the Brussels Convention of 1924, 43 Stat. p. 1863. The purpose of the Act was to provide in the international sphere the uniformity achieved for American voyages in the earlier Harter Act of 1893. 46 U.S.C.A. § 190 et seq. Scarburgh v. Compagnia Sud-Americana De Vapores, 2 Cir., 1949, 174 F.2d 423, 424. Cf. Knauth, Ocean Bills of Lading (1953) p. 136.

Under subdivision (4) of the Act, a bill of lading issued in pursuance of the provisions of the Act is "prima facie evidence of the receipt by the carrier of the goods as therein described in accord-

ance with paragraphs (3) * * * (b) * * * of" § 1303.

Subdivision (3) (b) provides that a shipper must show on the bill of lading "either the number of packages or pieces, or the quantity or weight, as the case may be, as furnished in writing by the shipper."

This provision, of course, gives the carrier the right to show either the number of packages *or* the quantity *or* the weight. It states that he shall show this data "as furnished in writing by the shipper."

Subdivision (3) (c) provides that the carrier shall not be bound to show any quantity or weight "which he has reasonable ground for suspecting not accurately to represent the goods actually received, or which he has had no reasonable means of checking."

The carrier, therefore, may show either the number of packages or the quantity or the weight, as he sees fit, but if he shows both the number of packages and the weight furnished in writing by the shipper, as he did in the instant case, is the carrier responsible not alone for the quantity but also for the weight shown on the bill of lading?

One purpose of the Carriage of Goods by Sea Act was to enable the consignee—or a third party, such as a bank—to rely on the description of the goods stated in the bill of lading. For that reason, such description constitutes prima facie evidence of the receipt by the carrier of the goods therein described. Having accepted the goods, the carrier may not avoid the prima facie effect of the bill of lading merely by entering weight and quantity as " 'Particulars Declared by Shipper.' " George F. Pettinos, Inc., v. American Export Lines, Inc., D.C.E.D.Pa.1946, 68 F.Supp. 759, 764, affirmed, 3 Cir., 1947, 159 F.2d 247.

No clause in any contract of carriage may relieve the carrier from liability for loss of the goods or for failure to comply with the obligations provided in the Carriage of Goods by Sea Act in any manner other than as provided in the Act. 46 U.S.C.A. § 1303(8).

The statutory policy permitting a reliance on bills of lading is an important one. Kupfermann v. United States, 2 Cir., 1955, 227 F.2d 348. The Act specifically states that the carrier shall furnish certain descriptive data in the bill of lading, but also provides that he is not bound to furnish any description which he has reasonable ground for suspecting is not accurate or which he has no reasonable means of checking. Having furnished this data in the bill of lading, the natural inference would be that he had no reasonable ground for suspecting it to be inaccurate and that, therefore, he is bound prima facie by the statement in the bill of lading. The statute puts upon the carrier the burden of being certain that the number of packages, or the quantity, or the weight, as set forth in the bill of lading, is accurate. If he has any doubt as to the accuracy of any such item, it should not appear in the bill of lading.

Nor does the fact that the bill of lading states that the description is provided by the shipper change this situation for the Act provides that he must put on the bill of lading the number of the packages, or the quantity, or the weight "as furnished in writing by the shipper" unless he has grounds to believe it to be inaccurate or has no reasonable means for checking the data. The Act implies that the description is that provided by the shipper.

Nor can the shipper escape its obligation by putting in some such phrase as "weight, measure, number, quantity, quality, contents, and value unknown". Where a bill of lading was for a certain quantity of wheat as shown by "shipper's weight" and the bill of lading specifically said that the weight was unknown, an English Court, in construing the provisions of the Canadian Water Carriage of Goods Act (which is substantially identical with the Carriage of Goods by Sea Act) held that the bill of lading was prima facie evidence that the quantity or weight as set forth in

the bill of lading was shipped, and that any clauses which expressed the weight as "said to be" or stated "weight unknown" were nugatory. "Patagonier" (Owners) v. Spear & Thorpe, 47 Lloyd's List Law Reports, p. 59 (1933).[1]

The Carriage of Goods by Sea Act would appear to provide that if a carrier places on the bill of lading either the number of the packages or the quantity or the weight of a shipment as received from the ship, such statements become prima facie evidence of the goods as therein described and, as such, are binding upon the carrier. He does not have to put such statements in the bill of lading if he has reasonable ground for suspecting that they are not accurate or if he has no reasonable means for checking. If he does put them in, he, in effect, assumes responsibility therefor and has a right over against the shipper for indemnity arising from inaccuracies in such particulars.

A bill of lading may be a receipt for goods plus a contract for the carriage of goods and also a negotiable document of title. Knauth, Ocean Bills of Lading (1953) pp. 134, 384. One of the purposes of the Carriage of Goods by Sea Act is to provide a prima facie description of the goods not merely as between the shipper and the carrier, but also for the benefit of any third party relying upon the bill of lading. Thus, if the carrier puts descriptive data in the bill of lading as to the weight of the shipment, he may not disavow liability therefor by stating that it is the shipper's weight. If there is any doubt in the mind of the shipper as to the weight being accurate, he need not put the weight in the bill of lading.

Where, however, under the customs of any trade, the weight of any bulk cargo asserted in a bill of lading is a weight ascertained by a third party other than the carrier or shipper, and the fact that the weight is so ascertained is stated in the bill of lading, then the bill of lading is not deemed prima facie evidence against the carrier of the weight so inserted in the bill of lading. 46 U.S.C.A. § 1310. We are not, however, in this case dealing with a bulk cargo nor with a statement in the bill of lading that the weight was ascertained by a third party.

In the present case, the bill of lading showed on its face that the weight of the cargo was stated to be over six tons. It showed on its face that freight was charged for over six tons; and, nevertheless, the facts conclusively show that when the goods were outturned, they weighed less than two tons. It would seem strange, indeed, if a carrier of goods by sea could accept a shipment weighing somewhat over one ton, issue a bill of lading which says that the shipper described the weight as over six tons, charge freight for over six tons, and then say that there is no prima facie obligation on it to deliver a cargo which approximates the six-ton weight shown on the bill of lading.

The carrier has not attempted to escape liability by any of the exceptions provided in the Carriage of Goods by Sea Act, or offered any proof that it did not receive a cargo of the weight described in the bill of lading, but has simply relied upon the assertion that the libelant has not succeeded in proving that it actually did receive a cargo which weighed in excess of six tons. The evidence is not disputed that if the bill of lading had not been issued, the letter of credit would not have been honored. The carrier, having put the bill of lading into circulation, cannot now escape the

---

1. There are two cases, one in Egypt and the other in a lower British court, in which the courts apparently concluded that if the bill of lading contained a statement of the number of packages and a statement of the weight, but with words indicating "weight unknown" or that the packages were "said to weigh", the bill of lading was not prima facie evidence of the weight of the cargo. Queensland Ins. Co. v. Messina & Co., 1955 A.M.C. 1131 (Egypt—Court of Appeals of Alexandria —1954); Pendle & Rivet v. Ellerman Lines (1927), 33 Com.Cas. 70. Neither of these cases indicates the particular form of the bill of lading.

prima facie responsibility of that bill of lading by saying that the weight set forth on the bill of lading was not its weight but a weight communicated to it by the shipper, for which it was not responsible. See American Trading Co. v. The Harry Culbreath, 2 Cir., 1951, 187 F.2d 310.

Conclusion.

The Court concludes that libelant is entitled to a decree against M/S Ferngulf and A/S Glittre for the damages sustained by it by reason of the shortage of cargo outturned by the respondents as compared with the cargo described on the bill of lading. In the event that the parties cannot agree upon the amount of damages, a further hearing will be held by me restricted solely to the amount of damages.

The foregoing shall constitute the findings of fact and conclusions of law of the Court. If either party desires other or additional enumerated findings or conclusions consistent with the foregoing opinion, they may be submitted upon ten days' notice to the other side.