**SAMINCORP SOUTH AMERICAN MINERALS & MERCHANDISE CORPORATION**

v.

**S. S. CORNWALL, her engines, etc., and T. J. McCarthy Steamship Company, Charterer of said Steamship Cornwall, and Figueras Compania Naviera, S. A., Owner of said Steamship Cornwall, and Patapsco Ship Ceiling & Stevedore Company, and August C. Stenger.**

**No. 4228.**

United States District Court
D. Maryland.

March 26, 1963.

Robert E. Coughlan, Jr., Alva P. Weaver III, of Lord, Whip, Coughlan & Green, Baltimore, Md., and Katz & Sommerich, New York City, for libelant.

John H. Skeen, Jr., Baltimore, Md., and Foster, Meadows & Ballard, Detroit, Mich., for T. J. McCarthy S.S. Co.

Robert H. Williams, Jr., Baltimore, Md., for Figueras Compania Naviera, S. A.

Southgate L. Morison, Baltimore, Md., for Patapsco Ship Ceiling & Stevedore Co.

Clater W. Smith and Herbert F. Murray, Baltimore, Md., for August C. Stenger.

WINTER, District Judge:

Pursuant to a Pre-trial Order, entered December 3, 1962, a preliminary hearing was held to determine upon whom rests the burden of proof as to the issue of liability. Libelant contends that proof of the issuance of a clean ocean bill of lading and the Railroad's exceptions to the tally record as to the crimped condition of the shipment of coiled sheets of hot rolled open hearth steel establishes a prima facie case of liability on the part

of the ship, its owner and/or charterer. The pre-trial order provided that determination of this contention should be without prejudice to the right of the libelant and any respondent to litigate further the issue of liability and to present any evidence in regard thereto deemed relevant and proper.

At the hearing there was presented an agreed partial statement of fact, which showed that the goods consisting of 79 coils of hot rolled open hearth steel sheets were loaded on board the S. S. "CORNWALL" at Antwerp, Belgium for carriage to Baltimore, Maryland. The ship is owned by respondent Figueras Compania Naviera, S. A., and was at the time chartered to T. J. McCarthy Steamship Company. An ocean bill of lading was issued for the goods on December 29, 1959, which recites that it is executed by the master of the vessel and that the goods were received on board " * * * in apparent good order and condition, weight, measure, marks, numbers, quality, contents and value unknown * *." No exceptions to this acknowledgment are stated.

The vessel arrived in Baltimore, and the goods were discharged on or about January 22, 1960, at Pier 10 Canton Railroad Company, into open railroad gondola cars. Respondent Patapsco Ship Ceiling & Stevedore Company discharged the goods; August G. Stenger assisted in discharging the cargo by use of a floating crane furnished by him, and libelant alleges it is the consignee of the goods. Testimony produced at the hearing established by an undated tally sheet, signed by Canton R. R. Co., the owner of the marine terminal, that exception was taken to the 79 coils of steel because of "crimping" on the edges. The Canton agent who testified denied that the goods moved over the railroad and that Canton issued another bill of lading.

That a clean bill of lading is prima facie proof of what it says, i. e., that the goods were received in *"apparent* good order and condition," is no longer open to doubt. Section 4 of the Harter Act, 46 U.S.C.A. § 193 (enacted in 1893) provides:

> "It shall be the duty of the owner or owners, masters or agent of any vessel transporting merchandise * * * to issue to shippers * * a bill of lading * * * stating whether it be carrier's or shipper's weight, and *apparent order or condition* of such merchandise or property delivered to and received by the owner, master, or agent of the vessel for transportation, and such document shall be *prima facie evidence* of the receipt of the merchandise *therein described."* [1] (Emphasis supplied)

■ ■ Subsequent decisional law makes clear that a clean bill of lading is prima facie evidence that the goods were not only received by the carrier, but in apparent good condition. Insurance Co. of North America v. Fredk, Leyland & Co., 191 F. 161 (3 Cir. 1911); Argo Steamship Co. v. Seago, 101 F. 999 (5 Cir. 1900); Aetna Ins. Co. v. The Satrustegui, 171 F.Supp. 33, modified 174 F. Supp. 934 (D.C.P.R.1959) (dicta); Thomas Roberts & Co. v. Calmar S. S. Corporation, 59 F.Supp. 203 (D.C.E.D. Pa.1945); Anno: 67 A.L.R.2d 1028, 1048 (1959). However, the words "in apparent good order and condition," ordinarily refer to defects which are visible or are fairly ascertainable, The Solveig, 217 F. 805 (D.C.N.D.Cal.1914); or stated otherwise, the bill of lading is prima facie evidence as to external conditions only. F. Badrena E. Hijo, Inc. v. The Rio Iguazu, 182 F.Supp. 885 (D.C.E.D.La. 1960).

These latter cases have no application here, because the libelant has abandoned all claim for rust damage and relies solely on the crimping of the coils; this, of course, is an external defect which was either visible or fairly ascertainable.

---

[1] This statutory presumption has not been altered by the subsequent enactment in 1936 of the Carriage of Goods by Sea Act §§ 3 and 4, 46 U.S.C.A. §§ 1303 and 1304. Gilmore and Black, The Law of Admiralty (1957 Ed.), § 3-43, at pp. 162, et seq.

■ The respondents contend that a different principle has been followed by the Second and Ninth Circuits. However, the cases cited have all involved damages arising out of inherent defects of the products shipped, i. e., their own natural propensity for spoiling, not *apparent* defects. The rule followed in those circuits is that when " * * * deterioration of the goods may have resulted from a hidden defect, the shipper has the burden of proving their good condition upon delivery to the carrier and to sustain that burden he must present some evidence beyond the bill of lading *since the bill of lading is evidence only of apparent or external good condition.*" Hecht, Levis & Kahn, Inc. v. The S. S. President Buchanan, 236 F.2d 627, 631 (2 Cir. 1956) (emphasis supplied). See also: Albers Bros. Milling Co. v. Hauptman, 95 F.2d 286 (9 Cir. 1938); Daido Line v. Thomas P. Gonzalez Corporation, 299 F.2d 669 (9 Cir. 1962). But this rule has not been followed in this Circuit, see S. L. Shepard v. Agwilines, Inc., 130 F.2d 67 (4 Cir. 1942); Brown and Williamson Tobacco Corp. v. S. S. Anghyra, 157 F.Supp. 737 (D.C.E.D.Va. 1957), rev'd on other grounds, Hellenic Lines, Ltd. v. Brown and Williamson Tobacco Corp., 277 F.2d 9 (4 Cir. 1960), cert. den. 364 U.S. 879, 81 S.Ct. 168, 5 L.Ed.2d 102 (1960), Acc. Gilmore & Black, The Law of Admiralty, loc. cit. supra. Of course, the effect of the Second and Ninth Circuit rule is limited to damages arising from inherent defects. Again, because of the abandonment of the claim for rust damage, this rule has no application here. Hence, the clean bill of lading will be deemed to be prima facie evidence that the coils of sheet steel were delivered to the carrier in an uncrimped condition.

In a post trial communication, the proctor for respondent Figueras Compania Naviera, S. A. suggests that it is appropriate to permit respondents to pursue discovery in regard to damages prior to the trial of the case on the merits, notwithstanding that the pre-trial order provided that trial in full on the issues of liability and damages be severed. He states, also, that all respondents are in agreement on this point.

Nothing in the pre-trial order limited discovery in general, or discovery as to any issue presented by the libelant. Accordingly, it is appropriate for all respondents to pursue discovery in regard to damages.