**CARIBBEAN PRODUCE EXCHANGE, INC., Plaintiff,**

v.

**SEA LAND SERVICE, INC., Defendant.**

**Civ. No. 74–626.**

United States District Court, D. Puerto Rico.

April 7, 1976.

Laffitte & Dominguez, Hato Rey, P. R., for plaintiff.

Jimenez & Fuste, San Juan, P. R., for defendant.

## OPINION AND ORDER

TORRUELLA, District Judge.

The case at bar entails a cargo claim against a common carrier, Sea Land Service, Inc., instituted by a consignee, Caribbean Produce Exchange, Inc.

Caribbean Produce Exchange, Inc. shipped six trailers of tomatoes from Oakland, California, to San Juan, Puerto Rico, aboard Defendant's vessels and using Defendant's refrigerated vans. Said trailers were shipped on different dates between August and October, 1972. The trailers were shipped under controlled atmosphere conditions referred to as "oxytrol", for which Defendant charged an extra fee of $275 per trailer pursuant to tariff. Oxytrol is a process whereby the atmosphere inside a refrigerated trailer is regulated by the use of nitrogen, oxygen and temperature, thus causing the ripening of a vegetable.

The oxytrol process is subcontracted by Sea Land Service, Inc., to Oxytrol Corporation. The payment for this service however, was made directly to Sea Land Service, Inc., in one check together with the freight bill. All arrangements of shipping of these trailers were made by an agent of Plaintiff, in Oakland, California, contacting exclusively Sea Land personnel. No other person or entity, including Oxytrol Corporation, was contacted by Plaintiff at any time relevant to this case. Plaintiff's agent made no adjustments to the controlled atmosphere of the six refrigerated trailers. There is no contract for these shipments or any other shipments between· Caribbean Produce Exchange, Inc., and Oxytrol Corporation, Sea Land's subcontractor.

Prior to loading the tomatoes, they were inspected by the United States Department of Agriculture and this inspection certified the cargo as in good condition. Thereafter, Defendant issued clean bills of lading for all trailers.

The trailers arrived in Puerto Rico on different dates and were jointly inspected by Plaintiff and Defendant. Four of the trailers arrived with rotten-green tomatoes.

All spoiled trailers were also inspected upon arrival by the United States Department of Agriculture and their state of decay was confirmed by this Agency. These trailers were dumped as total losses and dumping certificates were issued by the United States Department of Agriculture thus confirming that all tomatoes in the trailers lacked commercial value. Plaintiff thus suffered a loss in all four trailers valued at $30,437.50.

The applicable law in this particular case is the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. § 1300 et seq. Said Act was incorporated in the bills of lading of the case at bar. Said incorporation is valid. *A. M. Collins & Co. v. Panama R. Co.*, 197 F.2d 893 (CA5, 1952), cert. denied 344 U.S. 875, 73 S.Ct. 168, 97 L.Ed. 677; *Surrendra (Overseas Private, Limited) v. S. S. Hellenic Hero*, 324 F.2d 955 (CA2, 1963), 213 F.Supp. 97 (S.D.N.Y.1962).

 Plaintiff has established a prima facie case against Sea Land Service, Inc. by the carrier's receipt of the cargo in good order and its arrival in bad condition. *E. T. Barwick Mills v. Hellenic Lines*, 331 F.Supp. 161 (S.D.Ga., 1971), affirmed 472 F.2d 1406 (CA5, 1973). Clean bills of lading establish a prima facie case against carriers. *California Packing Corp. v. S. S. P. & T. Voyager*, 180 F.Supp. 108 (D.Cal.1960); *Spanish American Skin Co. v. M. S. Ferngulf*, 143 F.Supp. 345 (S.D.N.Y.1956), affirmed at 242 F.2d 551 (CA2, 1957); *Samin Corp. South American Mineral v. S. S. Cornwall*, 240 F.Supp. 327 (D.Maryland, 1963); *Cummins Sales & Service, Inc. v. London Overseas Ins. Co.*, 476 F.2d 498 (CA5, 1973) cert. den. 414 U.S. 1003, 94 S.Ct. 359, 38 L.Ed.2d 239; *E. T. Barwick Mills v. Hellenic Lines*, supra. Once a prima facie case is established against a carrier, the carrier must make an affirmative showing to the contrary or establish a strong possibility of a concealed vice in the goods. *E. T. Barwick Mills v. Hellenic*, supra; *California Packing Corp. v. S. S. P. & T. Voyager*, supra. The carrier in the case at bar did not present a defense

based on a concealed vice but alleged a limitation of liability contained in Sea Land's tariff provision, which is incorporated in Sea Land's long form bill of lading.

Defendant's defense in the case at bar rests exclusively in the following tariff item:

"ATMOSPHERIC CONTROL

Carrier agrees to provide a container for use under controlled atmosphere when such equipment is available. Carrier assumes no responsibility for the service performed by outside firms in imposing the atmosphere, nor for the adequacy of the inert atmosphere provided by such outside firms. Each trailer will be subject to an additional charge as indicated below:

| Between | And Ports in | Charges per trailer |
|---|---|---|
| Long Beach, Cal.; Oakland, Cal. | Puerto Rico | $275.00" |

This defense will not prevail because of any one of the following reasons:

I

 There is a general rule of law that common carriers cannot stipulate for immunity from their own or their agent's negligence. *United States v. Atlantic Mutual Insurance Co.*, 343 U.S. 236, 240, 72 S.Ct. 666, 96 L.Ed. 907 (1952).

 Since the case of *The Kensington*, 183 U.S. 263, 22 S.Ct. 102, 46 L.Ed. 190 (1901), the Supreme Court of the United States has stated that a common carrier [1] cannot stipulate for immunity for their own or their agent's negligence. This rule has been continuously accepted for more than a century as a guide to a common carrier relationship, and has become enacted into statute as part of the Carriage of Goods by Sea Act. At 46 U.S.C. § 1303(8):

"Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties and obligations provided in

---

1. Private carriers can stipulate against their negligence as well as that of their agents. *Tes-*

*sler Brothers B. C. Ltd., v. Italpacific Line*, 494 F.2d 438 (CA9, 1974).

this section, or lessening such liability otherwise than as provided in this chapter, shall be null and void and of no effect. A benefit of insurance in favor of the carrier or similar clause, shall be deemed to be a clause relieving the carrier from liability."

In the case of *Grace Line Inc. v. Todd Shipyard Corp.*, 500 F.2d 361 (CA9, 1974), the Court held, citing *U. S. v. Atlantic Mutual Insurance Co.*, supra, that a common carrier cannot, in light of 46 U.S.C. § 1303(8), stipulate against the negligence of its subcontractors. In the case of *Fyfe v. Pan-Atlantic SS Corp.*, 114 F.2d 72 (CA2, 1941), cert. den. 311 U.S. 711, 61 S.Ct. 319, 85 L.Ed. 462, it was decided that a carrier could not contract against its liability for damages caused by its subcontractors, a lighterage company. Courts have traditionally declared null clauses wherein common carriers attempt to limit their liability further than allowed by statute. *Standard Brands v. Thos & Jno. Brocklebank Limited*, 81 F.Supp. 670 (D.N.Y.1948); *Shinko Boeki Co., Ltd. v. SS "Pioneer Moon"*, 507 F.2d 342 (CA2, 1974); *Blanchard Lumber Co. v. SS Anthony II*, 259 F.Supp. 857 (S.D.N.Y.1966).

■ Defendant in its brief of February 17, 1976, accepts that a common carrier cannot stipulate against the negligence of its agents or that of its servant. But Defendant alleges that in the case at bar, Oxytrol Corporation, the corporation providing the controlled atmosphere, was an "independent contractor dealing directly with the shipper and/or consignee or with the shipper for the benefit of the consignee." The evidence, however, reveals that regarding these four shipments all made in August, September and October of 1972, the shipper, Mr. Seymour Cohen, did not deal in any manner with any one but with Mr. Larry Creech, Sea Land's only witness in this case. Mr. Larry Creech in his direct examination did not deny that all shipping arrangements for these four vans were made with him. The consignee, Plaintiff, Caribbean Products Exchange, Inc., did not deal with anyone but Sea Land personnel regarding these four shipments. Furthermore, there was no contract entered into between Oxytrol Corporation and Caribbean Produce Exchange, Inc.[2] There is, however, a contract between Sea Land Service, Inc. and Oxytrol Corporation for providing controlled atmosphere, oxytrol, in Sea Land's trailers. Said contract has been in effect since 1965. Oxytrol Corporation is, therefore, a subcontractor of Sea Land Service, Inc., and not of Caribbean Produce Exchange, Inc.

■ Payment in all these cases was made directly to Sea Land as part of the freight bill, in one check, as indicated in Sea Land's tariff. Sea Land's only witness attempted to establish that the extra charge was "an advance." However, an examination of all bills of lading, as well as the extra charge indicated in the tariff does not indicate that the payment was "an advance." Defendant is estopped from verbally changing the express written terms and conditions in the bills of lading, which are not only a receipt, but also a contract. *Ortega & Emigh v. Grace Line*, 72 F.Supp. 302 (D.Cal.1947); *Amoco Overseas Co. v. S. T. Avenger*, 387 F.Supp. 589 (S.D.N.Y.1975); *Spanish American Skin Co., v. M. S. Fergungulf*, supra.

■ Sea Land Service also attempted to prove that it made a special concession to Caribbean Produce Exchange by allowing payment to be made to Sea Land for the controlled atmosphere instead of to the subcontractor. However, the tariff filed by Sea Land clearly establishes that the carrier can charge an extra fee of $275 per trailer to the shipper. The tariff does not establish that the extra fee is to be charged by the subcontractor. The subcontractor is not governed by the tariff which applies only

2. The following was testified by Sea Land's only witness in this case:

Q: You do not happen to have a contract between Oxytrol and Caribbean Produce, do you?
A: No Sir.

Q: Have you hear or seen of this contract?
A: No Sir.
Q: Have you participated in negotiations to this effect?
A: No Sir.

between carrier, shipper and consignee. These facts run contrary to Defendant's theory that Caribbean Produce Exchange specially requested that a payment be made to Sea Land Service instead of Oxytrol Corp.

Exhibit # 6 of Plaintiff, a Sea Land prepared document, contains an admission against interest. This document establishes at page 5 thereof that it is Sea Land Service, Inc. and that the subcontractor who offers the controlled atmosphere thus contradicting the theory that Caribbean Produce deals directly with the controlled atmosphere company.

"Sea Land now offers two systems which can control or gradually modify the atmosphere . . . Research has shown that by altering the mixture of gases in the atmosphere available to the product *we* can greatly extend the shelf life of the product. . . . Sea Land in conjunction with Oxytrol and Trans Fresh Freight Corporation now offers this service *in our* sea going refrigerated containers." (Emphasis added).

This document does not state that the shipper should request the controlled atmosphere from the subcontractor. It implies just the opposite. This document also contradicts the statement made by Defendant in its February 17, 1976 motion wherein it is alleged that Sea Land is not in the business of controlled atmosphere.

■ There is no doubt that Oxytrol Corporation is an agent of Sea Land because Oxytrol Corporation acts on Sea Land's behalf subject to Sea Land's control when it provides controlled atmosphere in Sea Land's trailers for Sea Land's customers. Since Oxytrol Corporation is an agent of Sea Land, the tariff's limitation of liability is null and void. 43 U.S.C. § 1303(8). *The Kensington,* supra; *U. S. v. Atlantic Mutual Insurance Co.,* supra; *Grace Line, Inc. v. Todd Shipyard,* supra; *Fyfe v. Pan Atlantic SS Corp.* (supra).

We are not impressed by Sea Land's insistence in attempting to focus on facts which occurred in 1969, three years prior to the shipments in the case at bar. Sea Land stressed the meetings that took place between Mr. Frank Terramorse, an Oxytrol Corporation's employee, and Mr. Gualberto Rodriguez, President of Caribbean Produce Exchange, Inc. These are inconsequential because no contract was signed or negotiated between Oxytrol Corporation and Caribbean Produce Exchange. Furthermore, Mr. Rodriguez did not talk, write or in any form communicate with anyone from Oxytrol Corporation from 1969, the year of the two meetings, to the date of the hearing of this case. Moreover, Plaintiff did not use oxytrol until 1972.

As to the theory that Sea Land verbally informed Caribbean Produce that the carrier could not be responsible for the products carried under controlled atmosphere prior to shipment. Said warning stands on the same legal footing as the tariff limitation of liability. If the written tariff is null and void, the verbal warning is equally null and void for the same reasons. 46 U.S.C. § 1303(8).

## II

■ The limitation of liability to be effective must be in Sea Land's short form bill of lading and not in Sea Land's long form bill of lading or its tariff provisions.

In the case of *Encyclopaedia Britannica v. SS Hong Kong Cany,* 422 F.2d 7 (CA2, 1969), it was held that 46 U.S.C. § 1303, was enacted to obviate the necessity for the shipper to make a detailed study of fine print clauses of a carrier's regular bill of lading before shipping out packages. The Court said that in the short form bill of lading the shipper relies upon the fact that the long form, which is incorporated by reference, contains only the usual provisions which closely follow COGSA, unless there is some warning on the face of the short form of special terms or exceptions which differ from the COGSA Provisions. In other words, the warning of limitation of liability must be in the short form bill of lading.

"What adds to its unfairness is the context in which the ocean bill of lading functions. In accepting the short form, the shipper relies upon the fact that the

long form, which is incorporated by reference, contains only the usual provisions which closely follow COGSA, unless there is some warning on the face of the short form of special terms or exceptions which differ from the COGSA provisions . ." 422 F.2d, page 14.

 In the case at bar, the warning of limitation of liability is not contained in Sea Land's short form bill of lading. It is contained in the Tariff which is incorporated in the long form bill of lading. The limitation of liability, therefore, is not valid for this reason also. Furthermore, the central purpose of 46 U.S.C. § 1303(8), is to avoid adhesion contracts, as in the case at bar, providing protection for shippers against the inequality in bargaining power. *Standard Electrica v. Hamburg*, 375 F.2d 943 (CA2, 1967), cert. den. 389 U.S. 831, 88 S.Ct. 97, 19 L.Ed.2d 89. Clauses in contracts wherein a party exonerates from liability *a priori* the other party's negligence are null if there is no equality in bargaining power. *Gates Rubber Co. v. USM Corp.* (CA7, 1975), 508 F.2d 603; *Kansas City Power & Light Co. v. United Telephone Co. of Kansas* (CA10, 1972), 458 F.2d 177; *Chico v. Editorial Ponce*, 101 D.P.R. 759 (1974). In the case at bar Plaintiff, a consignee, obviously does not have the same bargaining power as Sea Land Service, a common carrier.

### III

 A common carrier cannot limit its liability for negligence unless it proves that the shipper or consignee received some consideration for the limitation such as a choice of rates, wherein a lower rate is offered when limiting its liability. *The Lafcomo*, 64 F.Supp. 529 (S.D.Y.1946); 159 F.2d 654 (CA2, 1947) cert. den. 331 U.S. 821, 67 S.Ct. 1310, 91 L.Ed. 1838; *Sommer Corporation v. Panama Canal Co.*, 475 F.2d 292 (CA5, 1973). Here Sea Land not only did not prove that Caribbean Produce Exchange received a lower rate from Oakland, but in fact, it was established that Caribbean Produce paid a higher rate than normal, $275 more per trailer load. It is the common carrier who carries the burden of proof

because the common carrier is the party introducing the limitation of liability clause. The common carrier did not meet this burden.

### IV

 In any event, the limitation of liability does not apply to this case because said limitation of liability controls only when the atmosphere subcontractor is contracted by the shipper and/or the consignee, not when the subcontractor is engaged directly by the common carrier. Since the tariff does not make this distinction, and considering that limitation of liability clauses in bills of lading or tariffs are to be construed most strongly against the carriers, the limitation of liability does not apply to the present case. *Cabot Corp. v. SS Mormacscan*, 441 F.2d 476 (CA2, 1971), cert. den. 404 U.S. 855, 92 S.Ct. 104, 30 L.Ed.2d 96 (1971); *Robert C. Herd & Co. v. Krawill*, 359 U.S. 297, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959); *Bernard Screen Printing Corp. v. Meyer Lines*, 328 F.Supp. 288 (D.C.S.D.N.Y. 1970); 464 F.2d 934 (CA2, 1972), cert. den. 410 U.S. 910, 93 S.Ct. 966, 35 L.Ed.2d 272 (1973).

### V

 The tariff is not applicable herein because after a prima facie case was established against the carrier by the Plaintiff, the carrier did not prove that the loss was due to a failure of Oxytrol Corporation. Plaintiff established by means of the clean bills of lading, by the inspection certificate prior to shipment, and by the arrival of the products in a rotten condition, a prima facie case against the common carrier. *E. T. Barwick Mills v. Hellenic Lines*, supra. Once a prima facie case is established against a carrier, said carrier must make an affirmative showing to the contrary or establish a strong possibility of concealed vice in the goods. *California Packing Corp. v. SS P. & T. Voyager*, supra. Sea Land attempted to prove that the spoilage was due to a failure of its subcontractor, the provider of the controlled atmosphere. Sea Land did not prove to the Court that the temperature setting for this commodity was

correct. At most, Sea Land proved that the temperature remained constant, but Sea Land did not prove that the temperature setting, was accurate for this commodity. No Oxytrol expert witness testified that the temperature setting was correct; nor did any witness testify that the temperature setting was the appropriate one for this commodity. The request for a specific temperature is not made by the shipper or the consignee. Sea Land did maintain in some of the shipments the temperature in the bill of lading, but did not prove that this temperature setting was the correct one for the commodity transported while using controlled atmosphere. Sea Land therefore did not establish that the loss was due to a failure of its controlled atmosphere subcontractor and thus, for this additional reason, the tariff is not applicable.

In view of the above, Plaintiff is entitled to be compensated in the amount of $30,-437.50, which is the fair market value of the commodity in Puerto Rico. *Holden v. SS Kendall Fish*, 395 F.2d 910 (CA5, 1968); *The Guanancita*, 69 F.Supp. 928 (D.C.Fla.1947); *Interstate Steel Corp. v. SS Crystal Gem*, 317 F.Supp. 112 (D.C.N.Y.1970). Plaintiff is also entitled to interest from the date of the damage, and to costs.

The Clerk shall enter Judgment accordingly.

IT IS SO ORDERED.