**FLORENCIO ROMAN, INC.,**
**Plaintiff, Appellee,**

v.

**CTMT, INC., et al., Defendants,**
**Appellants.**

**No. 79–1157.**

United States Court of Appeals,
First Circuit.

Argued Oct. 1, 1979.

Decided Jan. 22, 1980.

Jose Antonio Fuste, Hato Rey, P. R., with whom Jimenez & Fuste, Hato Rey, P. R., was on brief for appellants.

Daniel R. Dominguez, Hato Rey, P. R., with whom Laffitte & Dominguez, Hato Rey, P. R., was on brief for appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, BONSAL, Senior District Judge.**

COFFIN, Chief Judge.

This is an appeal by a maritime carrier, CTMT, Inc., from a judgment for plaintiff-consignee, Florencio Roman, Inc., on six counts for damages to several shipments of fruits and vegetables. Suit was brought under the provisions of the Carriage of Goods by Sea Act, 46 U.S.C. §§ 1300–1315. Hearing was had before the district court, numerous stipulations and exhibits were made part of the record, testimony was taken, and the court issued comprehensive findings and conclusions.

The merit and complexity of this appeal fall considerably short of justifying appellants' 81 page brief. Appellants' major emphasis in this appeal is that their witnesses, rather than appellee's, should have been believed—an unlikely basis. We have reviewed all the evidence, see no error of law nor any clearly erroneous findings of fact, and affirm.

While the fact patterns of the six counts differ in detail, the common thread is as follows, according to the evidence credited by the judge and favoring the plaintiff. Fresh produce, such as plantains and sweet potatoes, was ordered by plaintiff from an export firm in the Dominican Republic. The goods were shipped via bills of lading bearing the notation "Shipper's Load and Count". The Vice President of the export firm in charge of selecting the produce and loading the trailers testified that the best quality products are chosen for shipping and that in any event official Dominican Republic Vegetable Sanitation inspectors inspect all such perishables before they are allowed to leave the country. Upon the arrival of the shipments in Puerto Rico, plaintiff discovered a lack of adequate refrigeration in the trailers, and official U. S. Department of Agriculture inspectors found substantial parts of each shipment in an advanced stage of deterioration.

Plaintiff sought to establish a prima facie case against the carrier by offering Clean Bills of Lading, to show delivery to the carrier in good order, and evidence of the damaged conditions of the goods on receipt from the carrier. See Cummins Sales & Service, Inc. v. London & Overseas Insurance Co., 476 F.2d 498 (5th Cir.), cert. denied, 414 U.S. 1003, 94 S.Ct. 359, 38 L.Ed.2d 239 (1973); Caribbean Produce Exchange, Inc. v. Sea Land Service, Inc., 415 F.Supp. 88 (D.P.R.1976). Not only did it, in our view, succeed, but also went one step farther and introduced, as we have noted, direct evidence of delivery of produce in good condition to the carrier.

Although this holding moots appellants' argument that the "Shipper's Load and Count" notations on the bills of lading place on plaintiff the burden of proving delivery to the carrier in good condition, we must note our concern. The plain words of 49 U.S.C. § 101 protect the carrier only from "damages caused by improper loading or by nonreceipt or by misdescription of the goods described". The authorities consistently deal with and speak of only the loading, describing, and counting processes, beginning with Modern Tool Corp. v. Pennsylvania R. Co., 100 F.Supp. 595 (D.N.J.1951). See, e. g., Federated Department Store v. Brinkle, 450 F.2d 1223 (5th Cir. 1971); Thousand Springs Trout Farms, Inc. v. IML Freights, Inc., 558 F.2d 539 (9th Cir. 1977); The Dublin Co. v. Ryder Truck Lines, Inc., 417 F.2d 777 (5th Cir. 1969); Minneapolis St. Paul & Sault Ste. Marie R. R. Co. v. Metal-Matic, Inc., 323 F.2d 903 (8th Cir. 1963).

As appellee notes, unexplained and unjustified expansion of "Shipper's Load and Count" was imported into the authorities in United States v. Central of Georgia Rail-

** Of the Southern District of New York, sitting by designation.

*way Co.*, 411 F.Supp. 1023, 1027 n.2 (E.D. Tenn.1976), citing *Dublin* in a footnote as holding that the *condition* of produce when delivered to the carrier must be proven; and in *Hunt-Wesson Foods, Inc. v. Central Truck Lines, Inc.*, 446 F.Supp. 1109, 1111 (S.D.Ga.1978), which repeats the error, citing the offending pages of *Central of Georgia.*

In assessing the second element of plaintiff's case, the condition of the goods on receipt, the district court dealt in detail with its reaction to defendant-appellants' chief witness, a marine cargo surveyor, one Acevedo. We believe the court had ample grounds to reject Acevedo's testimony that damage occurred because plaintiff kept opening the trailer door, after the produce arrived in Puerto Rico, to sell produce to customers on the street. It could and did credit the evidence that the discovery of damaged produce by the government inspectors took place a day before Acevedo even appeared on the scene. The converse situation also occurred: Acevedo made an early inspection of one shipment, a spot check, before the goods were delivered to plaintiff. He reported the entire shipment in satisfactory condition. The court could well refuse to credit this clean bill of health in light of the government inspectors' finding widespread rot in the trailer one day later.

Appellants argue that even if the plaintiff made out a prima facie case, they successfully satisfied their burden of affirmatively showing that the damage to the cargo was due to an inherent vice in the goods, not to any failure of care on the part of the appellant. Acevedo testified that the cause of the deterioration of the produce was a disease known as soft rot or Rhizopus soft rot, which is, he thought, omnipresent and a "field disease", which would run its course no matter what the conditions of the shipment might be. Thus, he stated, the deterioration of the shipments in question was not attributable to temperatures within the defendants' trailers. The court was well within its discretion in crediting plaintiff's witness who testified that keeping temperatures low was a means of keeping soft rot of whatever variety under control.

The court also could properly reject Acevedo's theory that the deterioration of the produce was occasioned by failure to precool it before shipment and accept contrary evidence.

Appellants argue further that the district court committed errors of law in crediting plaintiff's witnesses' testimony over Acevedo's on several issues of fact. A large part of Acevedo's testimony concerned matters contained in written reports prepared by Acevedo and stipulated by the parties as part of the record. Appellants claim that even though Acevedo testified about the contents of these reports, the court was not free to discredit statements of fact that were contained in the reports. This argument is without merit. The plaintiff stipulated only the fact of the reports themselves, not the truth of the statements therein. The court correctly exercised its judgment in weighing the evidence pertaining to the subject matter of the reports.

We see no purpose in addressing the endless march of minutiae paraded by appellants. We are not judging this matter as one of first impression. We are reviewing an intensely factual case where a painstaking trial judge has made many well-supported specific factual judgments and credibility decisions. Appellants are far short of seizing upon any issue of substance.

*Affirmed.*